1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife; and HERNANDO AMAYA GIL, a single man all as joint tenants, | Case No. |
| Plaintiffs, | NOTICE OF REMOVAL |
| v. | ***Clerk's Action Required*** |
| ONEWEST BANK, F.S.B., NORTHWEST TRUSTEE SERVICES, INC., and MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., | |
| Defendants. | |

To:     Clerk, United States District Court for the Western District of Washington;

And To:   Counsel for Plaintiffs, Charles M. Greenberg.

Defendants OneWest Bank, FSB ("OneWest") and Mortgage Electronic Registration Systems, Inc. ("MERS") hereby remove this case, originally filed in King County Superior Court, cause no. 11-2-36324-4, to the United States District Court for the Western District of Washington at Seattle.  OneWest and MERS remove the case pursuant to 28 U.S.C. § 1332, 1441, and 1446, on the grounds set forth below.[1]

---

[1] OneWest and MERS expressly preserve all Rule 12 objections. *See* Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1395 (3d ed. 2004) ("When a defendant removes an action from a state court in which he has

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I. STATEMENT OF FACTS

On October 20, 2011, Plaintiffs filed this action in King County Superior Court seeking to unwind the foreclosure sale of their property, or in the alternative, to obtain damages and criminal charges against OneWest. Ex. A, FAC § IX. As a basis for recovery, Plaintiffs present a variety of grievances arising from OneWest's use of MERS as its agent and nominee. In short, the Complaint asserts that MERS improperly assigned Plaintiffs' Deed of Trust to OneWest and thus tainted the foreclosure process. *See id.* ¶¶ 34–52.

Plaintiffs are Washington residents. *Id.* Defendants OneWest and MERS are both foreign corporations: OneWest is federally-chartered with its principal place of business in California; MERS is incorporated in Delaware with its principal place of business in Virginia. *Id.* Although Plaintiffs have included Northwest Trustee Services, Inc. ("Northwest Trustee"), a Washington corporation, as a defendant, the First Amended Complaint ("FAC") contains no substantive allegations regarding Northwest Trustee—indeed, the Complaint alleges no conduct by Northwest Trustee at all. In fact, the only allegation in the FAC that implicates Northwest Trustee is that it was improperly appointed as Trustee by OneWest Bank—*not* that Northwest Trustee took any independent wrongful actions. *See* FAC ¶ 40. Thus, Northwest Trustee is a nominal defendant and not considered in determining jurisdiction.

## II. BASIS FOR REMOVAL

OneWest and MERS remove this action under 28 U.S.C. §§ 1332, 1441(a). Removal is proper under § 1332 where (1) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (2) the suit is between citizens of different states. 28 U.S.C. § 1332. Each element is discussed below.

---

been sued, he consents to nothing and 'waives' nothing; he is exercising a privilege unconditionally conferred by statute, and, since the district court to which he must remove it is fixed by law, he has no choice, without which there can be no 'waiver.'" (*quoting Greenberg v. Giannini*, 140 F.2d 550, 553 (2d Cir. 1944))).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**A.     The District Court Has Diversity Jurisdiction Over Plaintiffs' Claims.**

**1.     Plaintiffs Have Placed More Than $75,000 in Controversy.**

Plaintiffs seek specific performance, declaratory judgment, and damages arising from OneWest's foreclosure on Plaintiffs' property, which secured a $391,992 loan. FAC at 11; Ex. B, at 2, ¶ (F) (publicly recorded Deed of Trust). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Henderson v. Nationstar Mortg. Co., LLC*, 2008 WL 302372, at *1 (W.D. Wash. Jan. 31, 2008) (Robart, J.) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002)); *see also Reyes v. Wells Fargo Bank, N.A.*, 2010 WL 2629785, at *4–*5 (N.D. Cal. June 29, 2010) (finding amount-in-controversy requirement met where plaintiffs sought injunctive relief preventing bank from foreclosing and the value of property exceeded $75,000). Further, "[i]f the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation." *Reyes*, 2010 WL 2629785, at *4 (quoting *Garfinkle v. Wells Fargo Bank, N.A.*, 483 F.2d 1074, 1076 (9th Cir. 1973)); *see also Garcia v. Citibank, N.A.*, 2010 WL 1658569, at *2 (E.D. Cal. Apr. 23, 2010) (holding that the object of the litigation was the property that plaintiff sought to enjoin the defendant from selling at future foreclosure sale).

Here, Plaintiffs have alleged that OneWest improperly foreclosed on their property and thus seek to unwind the trustee's sale or obtain damages. Ex. A, FAC at 11. The property is currently assessed at $292,000, and thus the amount in controversy exceeds $75,000. *See, e.g.*, http://info.kingcounty.gov/Assessor/eRealProperty/Dashboard.aspx?ParcelNbr=6667100530 (King County Dep't of Assessments website) (last visited on December 1, 2012).

**B.     Complete Diversity Exists.**

Complete diversity exists because Plaintiffs are Washington residents, and OneWest and MERS are foreign entities (located in California and Delaware respectively). *See* Ex. A,

FAC ¶¶ 2, 4.[2]  Although Northwest Trustee is a Washington corporate entity, it is a nominal defendant that the Court should disregard for purposes of diversity.  Courts have called trustees "[t]he paradigmatic nominal defendant[s]," which "[are] not considered for the purpose of establishing diversity jurisdiction"—particularly where a trustee is joined "merely because he occupies the position pursuant to a deed of trust."  *Prasad v. Wells Fargo Bank, N.A.*, 2011 WL 4074300, at *2–*3 (W.D. Wash. Sept. 13, 2011) (quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *Anderson v. Homecomings Fin., LLC*, 2011 WL 2470509, at *4–*5 (D. Utah 2011)) (noting that "most courts that have considered the issue of whether a trustee under a deed of trust is a nominal defendant in an action challenging foreclosure . . . have taken the position advanced by [the lender]"—i.e., that the trustee is nominal).  Here, Plaintiffs have joined Northwest Trustee merely because of the position it occupies pursuant to the Deed of Trust.  Indeed, the Complaint contains no allegations of misconduct against Northwest Trustee—Plaintiffs' Statement of Facts contains ***not one*** alleged act by Northwest Trustee.  Ex. A, FAC ¶¶ 6–14.

### C.    Removal Is Timely.

Removal of this action is timely because OneWest and MERS have filed the notice of removal within 30 days of service of the summons and complaint (November 14, 2011).  *See* 28 U.S.C. § 1446(b).  A copy of the complete state court record is attached to the Verification of State Court Records as Exhibit A, which is being filed concurrently with this Notice of Removal, as required by 28 U.S.C. § 1446(a) and Local Civil Rule 101(b) for the Western District of Washington.

### D.    Co-Defendant Northwest Trustee Has Consented to Removal.

Co-Defendant Northwest Trustee has consented to removal of this action.

---

[2] *See* FDIC Institution Directory: http://www2.fdic.gov/IDASP/main.asp (search "OneWest"); *see also* Delaware Dept. of State, Division of Corporations: https://delecorp.delaware.gov/tin /controller (search "Mortgage Electronic Registration Systems").

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**E.      Removal to the Western District of Washington at Seattle Is Proper.**

Removal is proper to the Western District of Washington at Seattle because the district and division embrace King County, Washington.  28 U.S.C. § 1441(a); *see* Local Civil Rule 5(e)(1).

**F.      OneWest and MERS Have Complied with 28 U.S.C. § 1446 Requirements.**

Attached as Exhibit A to this notice is all process, pleadings, papers, and orders served in this action within the meaning of 28 U.S.C. § 1446(a).  Written notice of the filing of this Notice of Removal and the removal of the state court action is being served on Plaintiffs.

The removal of this action terminates all potential proceedings in King County Superior Court.  *See* 28 U.S.C. § 1446(d).  OneWest and MERS will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of Washington for King County.

### III. CONCLUSION

OneWest and MERS respectfully give notice that the above-entitled action is removed from King County Superior Court to the United States District Court for the Western District of Washington.

DATED  this 13th day of December, 2011.

DAVIS WRIGHT TREMAINE LLP
Attorneys for OneWest Bank, FSB and Mortgage
Electronic Registration Systems, Inc.


By /s/Fred B. Burnside
    Fred B. Burnside, WSBA #32491
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 757-8016
    Fax: (206) 757-7016
    E-mail: fredburnside@dwt.com

Notice of Removal - 5
DWT 18634131v2 0092420-000003

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the state of Washington and the United States of America that on this 13th day of December 2011, I caused the foregoing document to be served via legal messenger on the following parties of record:

Charles M. Greenberg
Tried Law Group
209 Dayton Street, Suite 105
Edmonds, WA  98020

**Attorney for Plaintiffs**

Heidi E. Buck
Lance E. Olsen
Routh Crabtree Olsen, P.S.
13555 S.E. 36th Street, Suite 300
Bellevue, WA  98006

**Attorneys for Defendant Northwest Trustee Services, Inc.**

Dated this 13th day of December 2011 at Seattle, Washington.

/s/Fred B. Burnside
Fred B. Burnside

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

4

FILED

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants, Plaintiffs, | NO. **COMPLAINT** |
| vs. | |
| ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc., | |
| Defendants. | |

Plaintiff Claudia M. Florez and Julio C. Florez, through counsel Charles M. Greenberg and Triad Law Group, hereby allege, aver, and complain against defendants as follows:

## I. STATEMENT OF THE CASE

1.  To foreclose outside of the judicial process, the foreclosing party must prove its claim to the property through a clear and public chain of title. The privilege of non-judicial foreclosure depends on the clear and accurate system of public records being maintained by the County Recorder pursuant to state recording and conveyance statutes.

2.  A beneficiary may only foreclose non-judicially after swearing, under oath, that it physically possesses the original executed negotiable instrument. See RCW 61.24.030 (7). One of the policies underlying Washington's Deed of Trust Act is the concept of procedurally sound nonjudicial foreclosures. *Udall v. T.D. Escrow Services, Inc.*, 159 Wn.2d 903, 916, 154 P.3d 882 (2007); *See also Cox v. Helenius*, 103 Wn.2d 383, 693 p.2d 683 (1985).

**COMPLAINT** - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

5

p.2d 683 (1985).

3.  Similarly, since the statutes allowing for nonjudicial foreclosure dispense with many of the protections that are commonly enjoyed by borrowers, "lenders must strictly comply with the statutes, *and courts must strictly construe the statutes in the borrower's favor." CHD, Inc. v. Boyles,* 138 Wn. App. 131, 137, 157 P.3d 415 (2007) *quoting Amresco Independence Funding, Inc. v. SPS Props., LLC.,* 129 Wn. App. 532, 537, 119 P.3d 884 (2005) (emphasis added.)

4.  Because of the doubt that has been cast, many states' Attorneys General have joined in an investigation into the standard foreclosure procedures being used by the nation's major mortgage lending institutions.  Many of these institutions have admitted, on the record, that they have prosecuted hundreds of thousands of judicial foreclosures nationwide, going as far as to swear to physically having possession of the negotiable instrument, when in fact they did not, or could not prove (as they allege), actual physical possession of the underlying promissory notes.

## II. PARTIES

5.  Plaintiffs Claudia M. Florez and Julio C. Florez ("homeowners") are residents of King County, Washington, and the current owners of property located at 4520 South 220th Street aka 22243 44th Avenue South, Kent, WA 98032 (the "Property.")

6.  Defendant OneWest Bank, F.S.B. ("OneWest") is a federally chartered savings bank and is located in California.  OneWest acquired IndyMac Bank as successor-in-interest to the Federal Deposit Insurance Corporation ("FDIC").

7.  Defendant Northwest Trustee Services, Inc. ("NW Trustee Services") is a Washington Corporation that performs certain trustee services.

8.  Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a corporation that is acting solely as nominee for the lender (as well as lender's successors and assigns.)

9.  On information and belief, MERS is not registered to do business in the state of Washington, nor is it licensed with either the Washington State Insurance Commissioner or Department of Financial Institutions.

## III. JURISDICTION AND VENUE

10.  OneWest Bank, F.S.B. is the banking institution that does business in the state of Washington.

**COMPLAINT - 2**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

6

11. The property, which is the subject of this dispute, is located in Kent, Washington and the homeowners reside in the subject property. Because there are federal questions, this court has jurisdiction over the parties and the subject matter of this action.

12. Venue is proper in King County Superior Court because the subject home is located in King County, Washington.

### IV. STATEMENT OF FACTS

13. On or about January 5, 2007, the homeowners executed a mortgage promissory note (hereinafter "Note") so as to purchase the property described as follows:

**4520 South 220th Street aka 22243 44th Avenue South, Kent, 98032**

#### a. Deed of Trust Provisions

14. The "DEFINITIONS" section of the Deed of Trust defines the roles of the original parties as follows:

15. **(A) "Security Instrument"** means this document, which is dated January 5, 2007, together with all Riders to this document.

16. **(B) "Borrower"** is Claudia M. Florez and Julio C. Florez, Borrower is the trustor under this security Instrument.

17. **(C) "Lender"** is OneWest, F.S.B., a federally chartered savings bank who is located at 155 North Lake Avenue, Pasadena, CA 91101. IndyMac, the original lender, failed and its assets were later received by OneWest Bank via the FDIC.

18. **(D) "Trustee"** is Chicago Title Insurance Co.

19. **(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a corporation that is acting solely as nominee for lender (as well as lender's successors and assigns.)

20. MERS is identified as the beneficiary under this Security Instrument.

21. The Deed of Trust states as follows in the paragraph after the legal description and property address:

> **Borrower understands and agrees that MERS hold only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any legal action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.** *See* **Trust Deed, at ¶ 2 of page 2 of 10.)**

COMPLAINT - 3

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

7

22.  MERS is clearly not the beneficiary to the Deed of Trust as defined under Washington law.

23.  Additionally, the term "nominee" is nowhere defined in the actual Deed of Trust and is therefore *per se* ambiguous.

24.  The simultaneous claims that "**MERS is the beneficiary**" coupled with the claim that MERS is "acting solely as nominee for Lender" are in complete contravention to one another. These claims are designed to create confusion and an ever shifting fabric of foreclosure liability in favor of MERS and its members.

25.  Furthermore, MERS is not nominee "for Lender and Lender's successors and assigns" when such a purported grant of authority in perpetuity contradicts well-established principles of agency law.

26.  Indeed, according to MERS' own membership rules, MERS cannot be a "nominee" for any non-MERS member which has not paid its membership fees.

### b. The Lender Is the Beneficiary of the Trust Deed

27.  Note that the Deed of Trust conveys a security interest and power of sale in the real estate to the Lender (not MERS):

> This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note; and (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocable grants, conveys to Trustee, in trust, with power of sale, the following described property located in the Snohomish County, Washington: [legal description of property]. (*See* Deed of Trust, at ¶ 1 of page 2 of 10).

28.  Other provisions of the Deed of Trust confirm that Indy Mac is the lender and therefore it is only Indy Mac that has the rights of enforcement under the security instrument:

> If (a) Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations) then Lender may do  and pay whatever is

COMPLAINT - 4

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

8

necessary to protect the value of the Property and Lenderr's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2. *(See Deed of Trust, at ¶ 7 section 2 of page 4 of 10)*

29. The express language of the Deed of Trust further confirms that it is only the lender which retains the substantive rights under the instrument, including the power to reconvey:

> Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. *(See Deed of Trust, at ¶ 19 page 8 of 10)*

30. The Deed of Trust expressly directs all payments to be made to lender and all notice provisions of the instrument expressly refer to the lender. *Id. See* Deed of Trust, at ¶1 page 2, Uniform Covenant 1., 2. and 13.

31. (The court is asked to take judicial notice regarding the statements contained in paragraphs 31-35 and referenced footnotes.) Consistently, MERS itself admits that it is not the beneficiary to any trust deed: in a September 2009 deposition in another matter, MERSCORP, Inc. (the parent-company of MERS) President R.K. Arnold admitted that his company does not have a beneficial interest in any mortgage or Deed of Trust; that it does not loan money; and that it does not experience a default if and when a borrower fails to repay a mortgage loan.[1]

32. On information and belief, virtually every state Supreme Court ruling that has evaluated MERS' role in mortgage transactions has come to the same conclusion as is articulated in this complaint: MERS is not the beneficiary to any deed of trust and therefore MERS cannot assign the beneficial interest in a deed of trust because of its complete and total lack of ownership in the underlying debt.[2]

---

[1]*See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[2] *See Landmark National Bank v. Kesler*, 216 P.3d 158 (Neb. 2009); *Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas, Inc.*, 301 S.W.3d 1 (Ark. 2009); *Bellistri v. Ocwen Loan Servicing*, 284 S.W.3d 619 (Missouri 2009); *Mortgage Electronic Registration Systems, Inc. v. Neb. Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005); *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2 A.3d 289 (Maine 2010).

COMPLAINT - 5

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

9

33. Additionally, the nation's federal bankruptcy courts are virtually unanimous in holding that MERS is not the real-party-in-interest to any mortgage promissory note, trust deed or lien, and therefore lacks standing to bring a proof of claim.[3]

### c. MERS Claims To Be the Trustee of Plaintiff's Property

34. After claiming in the Deed of Trust, to be both **"Beneficiary"** and the **"Nominee,"** MERS then claims that it holds only legal title to the trust property:

> **Borrower understands and agrees that MERS holds *only* legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument (emphasis supplied).** *See* Trust Deed, at ¶ 2 of page 2 of 10

35. MERS does not, and cannot, hold legal title to the trust property because by the express definition provided in the Deed of Trust itself, it is the trustee that holds legal title.

36. The Trustee is identified in the original DOT as Northwest Trustee, not MERS *See* DOT, *supra.*

37. RCW 61.24.020 provides in pertinent part as follows: "No person or corporation or association may be both trustee and beneficiary under the same deed of trust." RCW 61.24.020.

38. Additionally, legal title to one parcel of real property cannot be simultaneously held by two different parties.

39. Furthermore, MERS does not qualify to act as trustee/legal title holder for real property in the state of Washington.

40. The court is asked to take judicial notice regarding paragraphs 39-45. Please note that on September 21, 2010, GMAC formally suspended tens of thousands of foreclosures and

---

[3] *See In re Vargas*, 296 B.R. 511, (Bankr.C.D.Calif. 2008); *In re Wilhelm*, 407 B.R. 392 (Bankr.D.Idaho 2009); *In re Walker*, Case No. 10-21656-E-11 (E.D.Cal.2010) (unpublished opinion) ("to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, or as unperfected . . . . MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed."

**COMPLAINT - 6**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

evictions in 23 states after discovering that its foreclosure service employees, had submitted sworn affidavits which were fraudulently and/or negligently prepared, executed and delivered. *See* Reuters: "GMAC Suspends Evictions After Affidavits Challenged," attached as Exhibit. (Plaintiff asks the court to take judicial notice of paragraphs 41-47.)

41. GMAC's announcement triggered a cascade of similar announcements by the nation's other large mortgage lenders. For example, on September 29, 2010, JPMorgan suspended 56,000 foreclosures, admitting that its employees improperly signed documents used in the foreclosure process. *See* NYT: JPMorgan Suspending Foreclosures."

42. On October 8, 2010, after halting tens of thousands of foreclosures in 23 states, BAC announced a halt to foreclosures in all fifty states. *See* Washington Post: "BofA Halts Foreclosures in 50 States."

43. Plaintiff asks the Court to also take judicial notice that, on October 13, 2010, the Attorneys General in all 50 states opened a joint investigation into the fraudulent and/or negligent foreclosure practices described above. *See* Bloomberg: "Attorneys General in 50 States Join Foreclosure Probe."

44. That same day, JP Morgan announced it would immediately stop using MERS to conduct its foreclosures, validating Plaintiff's claims. *See* HousingWire: "JPMorgan Chase Drops MERS as Foreclsoure Agent."

45. On February 25, 2011, MERSCorp announced that it would propose a new rule that would prevent future foreclosures in its name. See Bloomberg: "Merscorp May Stop Members Foreclosing in Its Name" attached as Exhibit 2.

### d. OneWest and MERS Recorded an Invalid Assignment

46. The subject Deed of Trust was purportedly assigned on February 25, 2011.

47. The assignment was recorded on March 2, 2011. *See id.*

48. The assignment was executed by Brian Burnett, as Assistant Secretary of MERS. *Id.*

49. The assignment was notarized by "Jennifer Gilliam," who swore under penalty of perjury that Brian Burnett was "Assistant Secretary" of MERS and that Burnett proved to Gilliam that she had authority to assign the Note and Trust Deed.

COMPLAINT - 7

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

11

50. Brian Burnett is not a bona-fide employee, much less "Assistant Secretary" of MERS.

51. The mission statement of MERS, "Process Loans, Not Paperwork," clearly illustrates the problem faced by plaintiff and tens of millions of other homeoners mortgages that have been securitized through conveyances that have been intentionally concealed from public record. *See id.* "Process Loans, Not Paperwork."

## V. FIRST CAUSE OF ACTION – QUIET TITLE/DECLARATORY JUDGMENT

52. Plaintiffs hereby incorporate by reference all of the preceding paragraphs in the complaint as if fully set forth herein.

53. Plaintiff request that a speedy hearing be convened.

54. Black's Law Dictionary defines "nominee" as "[a] person designated to act in place of another, usually in very limited way," and as "[a] party who holds bare legal title for the benefit of others or who recieves and distributes funds for the benefit of others." Black's Law Dictionary 1076 (8th ed. 2004.)

55. Legal title is defined as "[a] title that evidences the apparent ownership but does not necessarily signify full and complete title or beneficial interest." Black's Law Dictionary 1523 (8th ed. 2004.)

56. Pursuant to the language contained in the subject Deed of Trust, legal title was conveyed to the trustee, Chicago Title Insurance Company upon execution of the Deed of Trust.[4]

57. The non-judicial power of sale of real property derives from the deed of trust authenticated by the borrower at the time of the execution of the promissory note.

58. Washington's non-judicial foreclosure statute clearly defines the secured parties to a deed of trust.

59. Therefore, MERS cannot possess the beneficial interest at the same time as the lender-given that the lender has this interest.

60. As noted above, the Deed of Trust consistently refers to the lender's rights in the property

---

[4] *See also Capital Assets Financial Services v. Maxwell*, 994 P.2d 201, 203 (Utah 2000) ("A trust deed is a deed ... *conveying real property* to a trustee in trust to secure the performance of an obligation for the beneficiary of the trustor or other person named in the deed. A trust deed is similar to a mortgage in that it is given as security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee. *Upon default, the trustee has power to sell the property to satisfy the trustor's debt to the beneficiary* (emphasis original).")

**COMPLAINT** - 8

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

and not to MERS.

61. The context here is as follows: Plaintiff are unsophisticated borrowers who should be evaluated from the "least sophisticated consumer" standard under federal consumer protection law, especially when compared with defendants, who are sophisticated mortgage lenders, servicers and foreclosers.

62. MERS' purported authority and role in this transaction was never disclosed to plaintiff by IndyMac or its settlement agent at closing.

63. The grant of authority-assuming that such grant had been made-to MERS is unconscionable and/or an adhesion contract when it was not bargained for by plaintiff and when lender had superior bargaining position. Plaintiff had no option but to sign the Deed of Trust as it was provided.

64. The grant of authority to MERS is unconscionable and/or an adhesion contract when it provided no benefit whatsoever to plaintiff but benefitted defendants by lowering transaction costs for the securitization of the subject Deed of Trust and by enabling shifting foreclosure liability in favor of Lender.

65. Because of MERS and its efforts to subjugate the system of public records for transfers of interest in real property, plaintiffs do not know, nor can they determine, who in fact was or is their mortgagee.

66. MERS was not the record beneficiary.

67. MERS did not hold legal title. MERS was put on an Notice by virtue of the "Notice of Correction to Deed of Trust"

68. As a non-beneficiary, MERS could not assign any interest of Indy-Mac.

69. The Assignment of the Note and Trust Deed is void as a matter of law when it was executed and recorded by a non-beneficiary, MERS.

70. The Assignment is also void when it purported to assign the Note in addition to the Deed of Trust. Even if this Court declares that MERS has limited authority to act as "nominee" on behalf of the record beneficiary, MERS cannot assign the underlying debt obligation based on its complete and total lack of ownership interest in the note.

71. Only the record beneficiary can assign its interest in a Deed of Trust.

72. Only the note holder can assign the note obligation. See Notice to cease and desist.

**COMPLAINT - 9**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

13

73. When a mortgage promissory note is transferred to another party, the security interest passes with the debt by operation of law.

74. However, if the instrument is negotiated without a simultaneous or subsequent valid recorded assignment of the beneficial interest in the trust deed, that party cannot avail itself of the non-judicial foreclosure process: it must foreclose judicially.

75. Judge Brandt put it aptly in the case of IN re: Jacobson, No. 08-45120, UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON, 2009 Bankr. LEXIS 709, March 10, 2009, Decided, March 10, 2009, Entered on Docket as follows:

> **"In Washington only the holder of the obligation secured by the deed of trust is entitled to foreclose. RCW 61.24.005(2) defines 'beneficiary under a deed of trust as the holder of the instrument or document evidencing the obligations secured by the deed of trust. See also Fidelity & Deposit Co. of Maryland v. Ticor Title Ins. Co., 88 Wash. App. 64. 943 P.2d 710 (1997.) Having an assignment of the deed of trust is not sufficient because the security follows the obligation secured, rather than the other way around. This principal is neither new nor unique to Washington; '[T]ransfer of the note carries with the security, without any formal assignment or delivery, or even mention of the latter."**

76. The court is asked to stay this foreclosure until 1) the consent decree that MERS entered into is approved and 2) the Washington State Supreme Court has issued ruling in this issue. Plaintiffs contend that the foreclosure was inappropriate and Plaintiffs seek money damages.

## SECOND CAUSE OF ACTION: Infliction of Emotional Distress
### (Against all Parties)

77. Plaintiffs repeat and incorporate by reference each of the preceding paragraphs in the complaint as if fully set forth herein.

78. Black's Law Dictionary defines "mental anguish" or "emotional distress'" as an element of damages including "the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame, public humiliation, despair, etc."'[7]

COMPLAINT - 10

14

79. The tort of outrage requires the proof of three factors: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.   Reid v. Pierce County, 136 Wash.2d 195, 202, 961 P.2d 333 (1998) (citing Dicomes v. State, 113 Wash.2d 612, 630, 782 P.2d 1002 (1989) citing Rice v. Janovich, 109 Wash.2d 48, 61, 742 P.2d 1230 (1987))).

80. These factors were adopted from the Restatement (Second) of Torts § 46 (1965) by the Washington Supreme Court in Grimsby v. Samson, 85 Wash.2d 52, 59-60, 530 P.2d 291 (1975). Washington State law clearly indicates that mental anguish and suffering is a causable action against the defendant in this case. This mental distress lead to more substantial physical ailment with the results leading to a diagnosis of cancer less than one week from the trustee sale date.

81. In years past, Washington state Courts were reluctant to consider damages for intentional infliction of emotional distress without objective symptomatology. As documented by medical records along with the timelines associated with the attempt to pay a secured obligation, Plaintiffs have experienced both negligent and intentional infliction of emotional distress due to Guild's practices of profiteering at any cost. (Plaintiffs recognize that they must show objective systems on a negligent infliction claim.)

82. In the alternative plaintiffs allege negligent infliction of emotional distress. The elements are the same as for intentional infliction of emotional distress.

### VIII. THIRD CAUSE OF ACTION
### QUIET TITLE/CONSUMER PROTECTION VIOLATIONS
### (Against All Defendants and Any Other Party
### Claiming an Interest in the Property)

83. Plaintiffs repeat and incorporate by reference each of the preceding paragraphs in the complaint as if fully set forth herein.

84. Plaintiffs bring this action against all named Defendants (or any other person claiming an interest in the subject property) to quiet title to the Property.

85. Plaintiff's property is encumbered by a Deed of Trust which is null and void because MERS has no valid recorded interest in plaintiffs' Deed of Trust, Note, or Property.

**COMPLAINT - 11**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

86. As described above, given the language of the Deed of Trust, MERS is not the beneficiary to plaintiffs' mortgage (or any mortgage, for that matter).[5]

87. MERS itself admits it is not the beneficiary to any trust deed: in a September 2009 deposition, MERS President R.K. Arnold admitted that his company does not have a beneficial interest in any mortgage; that it does not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[6]

88. Therefore, the property is encumbered by a Deed of Trust which is null and void, but is clouding title to the Property.

89. Plaintiff's claim to title is superior to defendants when plaintiffs took title by warranty deed and MERS has no valid recorded interest in the property.

90. A *lis pendens* will be filed against the property.

91. Plaintiff seeks an order from this court quieting title to the property in favor of plaintiffs.

92. In addition, Defendants all engaged in a scheme which was designed to deceive the Plaintiffs in this matter.

93. This is a violation of the Consumer Protection Act.

   The required elements of a Consumer Protection Act claim are as follows: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce (3) an impact on the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a casual link between the unfair or deceptive act and the injury suffered.

94. The defendant has breached these elements resulting in damages to plaintiff.

---

[5] *Mortgage Elec. Registration Sys., Inc. v. S.W. Homes of Ark.*, 301 S.W.3d 1, 4-5 (2009) ("MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt"); *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 788 (Neb. 2005) (MERS does not acquire mortgage loans" because "simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money"); *In re Walker*, Case No. 10-21656-E-11 (Bankr.E.D.Cal.2010) (unpublished opinion) (Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void . . . .").

[6] *See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

**COMPLAINT** - 12

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

16

95. Defendant's acts of violating MERS were unfair or deceptive and occurred in trade or commenced, had an impact on the public interest caused injury to plaintiff and there is a causal link between the deceptive act and the injury suffered.

96. Plaintiff is entitled to recover exemplary damages as defined in the consumer protection act in addition to attorney's fees and costs of suit incurred as a result of Defendant's actions as hereinabove set forth.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. For Declaratory Judgment ruling that only the record beneficiary of a Deed of Trust has the authority to assign a Deed of Trust.

2. For Declaratory Judgment ruling that MERS is not/was not the beneficiary of Plaintiff's Trust Deed.

3. For Declaratory Judgment ruling that the record ownership of any beneficial interest in a deed of trust may only be held by one party.

4. For Declaratory Judgment ruling that the Assignment of Deed of Trust is void when it was executed and recorded by MERS, a non-beneficiary.

5. For an Order directing all defendants to immediately rescind the above-identified false and/or misleading documents recorded on title to plaintiff's property.

6. For an order quieting title by nullifying and releasing the Deed of Trust clouding title to Plaintiffs' Property. Essentially, awarding title to Plaintiffs.

7. A ruling that the Consumer Protection Act was violated with damages to be proven at trial and an award of fees and costs under the CPA.

8. Any such other relief as the Court deems just including fees and costs.

COMPLAINT - 13

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

1    DATED this 19TH day of October, 2011.

2

3                              TRIAD LAW GROUP

4

5                              Charles M. Greenberg, WSBA 17661
                              Attorney for Plaintiff
6                              Triad Law Group
                              209 Dayton Street, Suite 105
7                              Edmonds, WA 98020
                              Tel: 425-774-0138
8                              Fax: 425-672-7867
                              Email: cmg@triadlawgroup.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


COMPLAINT - 14

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

18

19

FILED

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Julio Florez et. al. | NO.  11-2-36324-4    KNT |
| | Order Setting Civil Case Schedule (*ORSCS) |
| **Plaintiff(s)** | |
| vs | |
| OneWest Bank, F.S.B. et. al. | ASSIGNED JUDGE  Mack _____ 37 |
| | FILE DATE:                          10/20/2011 |
| **Defendant(s)** | **TRIAL DATE:**                **04/08/2013** |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____ | _____

Print Name                                                    Sign Name

Order Setting Civil Case Schedule (*ORSCS)

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$230** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

Order Setting Civil Case Schedule (*ORSCS)        REV. 12/08    2

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Thu  10/20/2011 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | Thu  03/29/2012 | * |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [*See KCLCR 4.2(a) and Notices on Page 2*]. | Thu  03/29/2012 | * |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [See *KCLCR 82(e)*] | Thu  04/12/2012 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(b)*]. | Mon  11/05/2012 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(b)*]. | Mon  12/17/2012 | |
| **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | Mon  12/31/2012 | * |
| **DEADLINE** for Setting Motion for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | Mon  12/31/2012 | * |
| **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | Tue  02/19/2013 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | Mon  03/11/2013 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [*See KCLCR 4(j)*]. | Mon  03/18/2013 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(2)*] | Mon  03/18/2013 | * |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | Mon  03/25/2013 | |
| Joint Statement of Evidence [*See KCLCR (4)(k)*]. | Mon  04/01/2013 | * |
| **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon  04/01/2013 | * |
| Trial Date [*See KCLCR 40*]. | Mon  04/08/2013 | |

### III. ORDER

Pursuant to King County Local Civil Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:   10/20/2011

*Richard F. McDermott*

**PRESIDING JUDGE**

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS**
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx .  If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:**  Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx  to confirm trial judge assignment.  Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES**

**A. Noting of Motions**

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

23

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

### B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

24

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

**C.    Form**

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

*Richard F. McDermott*

**PRESIDING JUDGE**

25

26

**FILED**

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

Julio Florez et. al.

VS

OneWest Bank, F.S.B. et. al.

NO.  11-2-36324-4 KNT

CASE INFORMATION COVER SHEET
AND AREA DESIGNATION

<u>CAUSE OF ACTION</u>

**(FOR) -**    PROPERTY RIGHTS

<u>AREA DESIGNATION</u>

**KENT -**    Defined as all King County south of Interstate 90 except those
areas included in the Seattle Case Assignment Area.

27

28

FILED

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants, <br> Plaintiffs, <br><br> vs. <br><br> ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc., <br><br> Defendants. | NO. <br><br> **SUMMONS** |

**THE STATE OF WASHINGTON TO:  Mortgage Electronic Registration System, Inc.**

A lawsuit has been started against you in the above-entitled court by the above-named plaintiffs.  Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

To defend against this lawsuit, you must respond to the complaint by stating your defenses in writing, and serve a copy upon the undersigned attorney for plaintiff(s) within twenty (20) days after the service of this summons upon you, excluding the day of service, if served within the State of Washington, or within sixty (60) days after service if served outside the State of Washington, or a default judgment will be entered against you without notice.  A default

SUMMONS - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

29

1  judgment is one where the plaintiffs are entitled to what they ask for because you have not

2  responded.  If you serve a Notice of Appearance on the undersigned attorney, you are entitled

3  to notice before a default judgment may be entered.

4       You may demand that plaintiffs file this lawsuit with the Court.  If you do so, the demand

5  must be in writing and must be served upon the person signing the summons.  Within fourteen

6  (14) days after you serve the demand, plaintiffs must file this lawsuit with the Court, or the

7  service upon you of this summons and complaint will be void.

8       If you wish to seek the advice of an attorney in this matter, you should do so promptly so

9  that your written response, if any, may be served on time.

10      This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of

11 Washington.

12

13      DATED this 20<sup>7h</sup> day of October, 2011.

14

15                    TRIAD LAW GROUP

16

17                    _____
                      Charles M. Greenberg, WSBA #17661
18                    Attorney for Plaintiffs

19

20

21

22

23

24

25

SUMMONS - 2

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

30

31

FILED

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

1

2

3

4

5

6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

7

8

9

10

11

12

13

14

15

16

| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants, <br>  Plaintiffs, <br> vs. <br> ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc., <br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. <br><br> **SUMMONS** |
| --- | --- | --- |

17   **THE STATE OF WASHINGTON TO:  Northwest Trustee Services, Inc.**

18    A lawsuit has been started against you in the above-entitled court by the above-named

19   plaintiffs.  Plaintiffs' claims are stated in the written complaint, a copy of which is served upon

20   you with this summons.

21    To defend against this lawsuit, you must respond to the complaint by stating your defenses

22   in writing, and serve a copy upon the undersigned attorney for plaintiff(s) within twenty (20)

23   days after the service of this summons upon you, excluding the day of service, if served within

24   the State of Washington, or within sixty (60) days after service if served outside the State of

25   Washington, or a default judgment will be entered against you without notice.  A default

SUMMONS  - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

32

judgment is one where the plaintiffs are entitled to what they ask for because you have not

responded.  If you serve a Notice of Appearance on the undersigned attorney, you are entitled

to notice before a default judgment may be entered.

You may demand that plaintiffs file this lawsuit with the Court.  If you do so, the demand

must be in writing and must be served upon the person signing the summons.  Within fourteen

(14) days after you serve the demand, plaintiffs must file this lawsuit with the Court, or the

service upon you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so

that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of

Washington.

DATED this ___19TH___ day of October, 2011.

TRIAD LAW GROUP

Charles M. Greenberg, WSBA #17661
Attorney for Plaintiffs

SUMMONS - 2

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

33

34

FILED

11 OCT 20 PM 4:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants, Plaintiffs, <br><br> vs. <br><br> ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc., <br><br> Defendants. | NO. <br><br> **SUMMONS** |

**THE STATE OF WASHINGTON TO:  OneWest Bank, F.S.B.**

A lawsuit has been started against you in the above-entitled court by the above-named

plaintiffs.  Plaintiffs' claims are stated in the written complaint, a copy of which is served upon

you with this summons.

To defend against this lawsuit, you must respond to the complaint by stating your defenses

in writing, and serve a copy upon the undersigned attorney for plaintiff(s) within twenty (20)

days after the service of this summons upon you, excluding the day of service, if served within

the State of Washington, or within sixty (60) days after service if served outside the State of

Washington, or a default judgment will be entered against you without notice.  A default

SUMMONS  - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

1   judgment is one where the plaintiffs are entitled to what they ask for because you have not

2   responded.  If you serve a Notice of Appearance on the undersigned attorney, you are entitled

3   to notice before a default judgment may be entered.

4      You may demand that plaintiffs file this lawsuit with the Court.  If you do so, the demand

5   must be in writing and must be served upon the person signing the summons.  Within fourteen

6   (14) days after you serve the demand, plaintiffs must file this lawsuit with the Court, or the

7   service upon you of this summons and complaint will be void.

8      If you wish to seek the advice of an attorney in this matter, you should do so promptly so

9   that your written response, if any, may be served on time.

10     This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of

11  Washington.

12

13     DATED this ____20____ day of October, 2011.

14

15                            TRIAD LAW GROUP

16

17

18                            Charles M. Greenberg, WSBA #17661
                              Attorney for Plaintiffs

19

20

21

22

23

24

25

SUMMONS - 2

36

37

FILED

11 NOV 01 PM 3:37

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants, <br> Plaintiffs, <br><br> vs. <br><br> ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc., <br><br> Defendants. | NO. 11-2-36324-4 KNT <br><br> **AMENDED COMPLAINT** |

Plaintiff Claudia M. Florez, Julio C. Florez and Amaya Gil, through counsel Charles M. Greenberg and Triad Law Group, hereby allege, aver, and complain against defendants as follows:

### I. PARTIES

1.  Plaintiffs Claudia M. Florez and Julio C. Florez and Amaya Gil ("homeowners") are residents of King County, Washington and the former owners of property located at 4520 South 220th Street, Kent, WA 98032 (the "Property.")

2.  Defendant OneWest Bank, F.S.B. ("OneWest" or "Lender") is a federally chartered savings bank and is located in California.

3.  Defendant Northwest Trustee Services, Inc. ("NW Trustee Services") is a Washington Corporation that performs certain trustee services.

4.  Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a corporation

AMENDED COMPLAINT - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

38

that is acting solely as nominee for the lender (as well as lender's successors and assigns.)

## II. JURISDICTION AND VENUE

5. Venue is proper in King County Superior Court because the subject home is located in King County, Washington.

## III. STATEMENT OF FACTS

6. On or about January 5, 2007, the homeowners executed a mortgage promissory note (hereinafter "Note") to Indymac Bank so as to purchase the property described as follows from lender IndyMac Bank:

   **4520 South 220th Street Avenue South, Kent, 98032, also known as UNIT 35, VOLUME 210 OF CONDOMINIUMS, PAGE 85**
   King County Recording number 20070111000758

7. The Deed of Trust Lists the Lender as IndyMac Bank. IndyMac has since failed.

8. The original Trustee was the Chicago Title Insurance Company.

9. Also listed on the Deed of Trust is defendant MERS: "MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns." *See* Deed of Trust, at ¶ (E) on page 1 of 14.

10. MERS is identified as the "beneficiary" under the Deed of Trust. *See Id.*

11. On March 2, 2011, an Assignment Deed of Trust was recorded, assigning the interest in the subject Deed of Trust to OneWest Bank. (King County Recording number 20110302001138). The assignment was made by MERS, claiming to be beneficiary, and was signed by "Brian Burnett, Assistant Secretary." The date of signing is listed as February 25, 2011.

12. Also recorded on March 2, 2011 was an Appointment of Successor Trustee, naming Northwest Trustee Services, Inc. as Trustee. (King County Recording Number 20110302001139). The appointment was made by OneWest Bank. (The document lists no date next to the signature but was notarized on February 22, 2011, three days before OneWest bank received the assignment from MERS described in the previous paragraph.)

13. Notice of Trustee Sale was recorded on March 24, 2011, listing OneWest and Northwest Trustee Services, Inc. as Grantors.

14. The Trustee sale and foreclosure occurred during October, 2011.

**AMENDED COMPLAINT** - 2

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

39

#### IV. FIRST CAUSE OF ACTION: Wrongful Foreclosure

15. Plaintiff hereby incorporates by reference all of the preceding paragraphs in the complaint as if fully set forth herein.

16. Washington law defines the "Beneficiary" of a Deed of Trust as follows: "[T]he holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."  RCW 61.24.005 (2).

17. MERS is identified in the Deed of Trust as the "beneficiary".  *See* Deed of Trust, ¶ (E) on page 1 of 14.

18. The Deed of Trust goes on to state as follows (in the paragraph after the legal description and property address):

> **Borrower understands and agrees that MERS hold only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any legal action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.** *See* Deed of Trust, on page 3 of 14.)

19. The term "nominee" is nowhere defined in the actual Deed of Trust and is therefore *per se* ambiguous.

20. The simultaneous claims that "MERS is the beneficiary" coupled with the claim that MERS is "acting solely as nominee for Lender" are in contravention to one another. These claims are designed to create confusion and an ever shifting fabric of foreclosure liability in favor of MERS and its members.

21. MERS is not a bank, it lends no money and it bears no risk of loss.  MERS is not a beneficiary as defined as Washington because of the nature of its operation, where it never acquires beneficial interest.

22. The court is asked to take judicial notice of the following paragraphs, 23-24, contained in this section of the Complaint, citing an order of the United States Office Department of the Treasury, Office of the Comptroller of the Currency which addresses serious

AMENDED COMPLAINT - 3

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

deficiencies in the way MERS goes about its business.  Please also see the enclosed Request for Judicial Notice

23.  After being closely scrutinized, MERS and its parent corporation MERSCORP, Inc. ("MERSCORP") consented to the issuance of the following language which is contained on page five of the agreed-on consent order:

> **(4) In connection with services provided to Examined Members related to tracking and registering residential mortgage loans and initialing foreclosures ("residential mortgage and foreclosure-related services.") MERS and MERSCORP.**
>   a. **have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members and**
>   b. **have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respects to administration and delivery of services to Examined Members"**
>   **(5.)   By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe and unsound practices that expose them and Examined Members to unacceptable operation, compliance, legal and reputational risks."**

*In the Matter of MERSCORP, Inc.*, OCC No. AA-EC-11-20, 5 (2011) *Emphasis Added*

24.  Note that the consent to these findings was expressly signed by numerous MERS and MERSCORP personnel.  Please see the enclosed Request for Judicial Notice

25.  The Washington State Supreme Court is currently considering a "MERS" case and therefore-at the least-the court is asked to unwind the foreclosure in this case if a decision is issued by the Supreme Court on the legitimacy of MERS acting as a beneficiary.

26.  The Court is also asked to take judicial notice of the case of *Bain v Metropolitan Mortgage Group Inc.*, Case No. C09-0149-JCC, W.D. Wash (2011.) in which the Federal Court certified the following questions to the Washington Supreme Court, illustrating the legal deficiencies in MERS' practices:

>   a. **Is MERS a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, RCW 61.24.005(2), if it never held the promissory note secured by the deed of**

AMENDED COMPLAINT - 4

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

trust?

    b. **If so, what is the legal effect of MERS acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?**

    c. **Does a homeowner possess a cause of action under Washington's Consumer Protection Act against MERS if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?**

*Bain v Metropolitan Mortgage Group, Inc.*, "Order Certifying Question to the Washington Supreme Court" C09-0149-JCC, W.D. Wash (June 24, 2011.)

    a. <u>**The Lender Is The Beneficiary Of The Trust Deed Under Washington Law, Rather Than MERS**</u>

27. Note that the Deed of Trust conveys a security interest and power of sale in the real estate to the original Lender, IndyMac (not MERS):

> **This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys to Trustee, in trust, with power of sale, the following described property located in the County or King: [legal description of property]. (*See* Deed of Trust, at "Transfer of Rights in the Property" page 3 of 14).**

28. MERS is not a true beneficiary under Washington law becaue it does not posses promissory note and they secure no obligtations as required of a beneficiary under Washington law, RCW 61.24.050(2). It is the lender who has secured the beneficial interest. MERS' actions in making assigments as a nominal beneficiary is not legal under Washington law.

    b. <u>**MERS Claims To Be or Have Been The Trustee of Plaintiff's Property**</u>

29. After claiming in the Deed of Trust, to be both "Beneficiary" and the "Nominee," MERS then claims that it holds only legal title to the trust property:

> **Borrower understands and agrees that MERS holds *only* legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of**

**AMENDED COMPLAINT** - 5

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

**Lender including, but not limited to, releasing and cancelling this Security Instrument (emphasis supplied).** *See* Trust Deed, page 3 of 13

30. MERS does not, and cannot, hold legal title to the trust property because by the express definition provided in the Deed of Trust itself, it is the trustee that holds legal title.

31. The Trustee is identified in the original DOT as Chicago Title Insurance Company, not MERS *See* DOT, *supra.*

32. RCW 61.24.020 provides in pertinent part as follows: "No person or corporation or association may be both trustee and beneficiary under the same deed of trust." RCW 61.24.020.

33. By claiming to hold legal title, which is the role of the Trustee, MERS attempts to skirt Washington law by assigning property it has no right to assign.

    c. **The assignment Deed of Trust to OneWest is invalid**

34. On March 2, 2011, an Assigment Deed of Trust was acknowledged for a foreclosure proceeding. The assignment was prepared by alleged benefuciary MERS, soley as nominee for the failed IndyMac Bank, and the assigment was made to OneWest.

35. The assignment is signed by 'Brian Burnett', an "Assistant Secretary" at MERS.

36. On information and belief, this signature is believed to be a "robo signature," as part of fraudulent scheme in making illegal assignments, and that Brian Burnett is not a MERS employee. Plaintiff will develop this theory through the discovery process.

37. The mission statement of MERS, "Process Loans, Not Paperwork," clearly illustrates the problem faced by plaintiff and tens of millions of other homeowners whose mortgages have been securitized through conveyances that have been intentionally concealed from public record. *See MERS' website.* "Process Loans, Not Paperwork."

38. Furthermore, The Assignment Deed of Trust naming OneWest beneficiary (executed by MERS) was signed on February 25, 2011 (King County Recording number 20110302001138). However, prior to becoming beneficiary on February 25, 2011 (and prior to recording the Assignment Deed of Trust), OneWest was already acting as the beneficiary of record because on February 22, 2011 it executed an Appointment of Successor Trustee, naming Northwest Trustee Services, Inc. trustee (King County Recording Number 20110302001139). These documents suggest that OneWest was

AMENDED COMPLAINT - 6

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

43

acting prior to becoming the beneficiary woth no rights thereto, strongly suggesting improprieties throughout this process.

39.   Both of these documents were recorded on March 2, 2011.

40.   Washington law states that a successor trustee must be "replaced by the beneficiary." RCW 61.24.010 (2).  In this case, becaue OneWest was not yet the beneficiary, they did not have authority to appoint a successor trustee.  Northwest Trustee Services, Inc. is not a valid trustee due to their illegal appointment, and therefore the foreclosure proceedings they instigated agaisnt the plaintiff were done wrongfully.

41.   Plaintiff's informational belief is that this retroactive appointment of successor Trustee may be part of a fraudulent scheme and Plaintiff will further develop this theory through the discovery process.

42.   Additionally, MERS ambiguously claims to be the nominee for IndyMac.  Black's Law Dictionary defines "nominee" as "[a] person designated to act in place of another, usually in very limited way," and as "[a] party who holds bare legal title for the benefit of others or who recieves and distributes funds for the benefit of others."  Black's Law Dictionary 1076 (8th ed. 2004.)

43.   Legal title is defined as "[a] title that evidences the apparent ownership but does not necessarily signify full and complete title or beneficial interest."  Black's Law Dictionary 1523 (8th ed. 2004.)

44.   Pursuant to the language contained in the subject Deed of Trust, legal title was conveyed to the trustee, Chicago Title Company upon execution of the Deed of Trust.[1]

45.   However, as stated above, MERS claims to hold legal Title itself.  *See Deed of Trust, Surpa.*

46.   The non-judicial power of sale of real property derives from the deed of trust authenticated by the borrower at the time of the execution of the promissory note.

---

[1] *See also Capital Assets Financial Services v. Maxwell*, 994 P.2d 201, 203 (Utah 2000) ("A trust deed is a deed ... *conveying real property* to a trustee in trust to secure the performance of an obligation for the beneficiary of the trustor or other person named in the deed. A trust deed is similar to a mortgage in that it is given as security for the performance of an obligation. However, a trust deed is a conveyance by which title to the trust property passes to the trustee. *Upon default, the trustee has power to sell the trust property to satisfy the trustor's debt to the beneficiary* (emphasis original).")

**AMENDED COMPLAINT** - 7

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

44

47. Therefore, MERS cannot possess the beneficial interest at the same time as the lender - given that the lender has this interest.

48. Because it lacked true beneficial interest, MERS could not assign any interest to the subsequent lender, which is what it did when it assigned the Deed of Trust to OneWest.

49. The Assignment of the Note and Trust Deed is void as a matter of law when it was executed and recorded by a non-beneficiary, MERS.

50. The Assignment is also void when it purported to assign the Note in addition to the Deed of Trust. Even if this Court declares that MERS has limited authority to act as "nominee" on behalf of the record beneficiary, MERS cannot assign the underlying debt obligation to OneWest as it did based on its complete and total lack of ownership interest in the note, thus making OneWest's acquired interest invalid.

51. As a result of the transgressions described above, Plaintiff seeks damages in some amount to be proven at trial and attorney's fees and costs as well as any consequential damages that were experienced.

52. Additionally, the Plaintiff has recently had a securitization analysis performed, which indicates that the Plaintiff's loan was securitized by Freddie Mac. Plaintiff's informational belief is that the securitization process was done by way of fraudulent assignment through MERS, and seeks to develop this element further through the discovery process.

## V. SECOND CAUSE OF ACTION: Infliction Of Emotional Distress

53. Plaintiffs repeat and incorporate by reference each of the preceding paragraphs in the complaint as if fully set forth herein.

54. The tort of outrage requires the proof of three factors: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. Reid v. Pierce County, 136 Wash.2d 195, 202, 961 P.2d 333 (1998) (citing Dicomes v. State, 113 Wash.2d 612, 630, 782 P.2d 1002 (1989) citing Rice v. Janovich, 109 Wash.2d 48, 61, 742 P.2d 1230 (1987))).

55. The plaintiff's claim meets all three elements. The conduct by the plaintiffs is this cause is extreme and outrageous, as they have taken the plaintiff's home from them without following the law. Their actions are intentional, as it is apparent the illegal process they have employed is part of a larger scheme being employed (and found to be illegal) across the county. The

**AMENDED COMPLAINT** - 8

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

45

plaintiffs have experienced emotional distress by the simple fact that their home has been taken from them illegally, causing them great stress and anguish.

## VI.  THIRD CAUSE OF ACTION: Consumer Protection Violations Against All Defendants and Any Other Party Claiming an Interest in the Property

56.  Plaintiffs repeat and incorporate by reference each of the preceding paragraphs in the complaint as if fully set forth herein.

57.  RCW 61.24.127 (1)(b) allows the plaintiff to bring a claim for a violation of Washington's Consumer Protection Act, RCW 19.86.

58.  The required elements of a Consumer Protection Act claim are as follows: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce (3) an impact on the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.* 105 Wn.2d 778, 784- 85, 719  P.2d  533 (1986)

59.  Plaintiffs bring this action against all named Defendants (or any other person claiming an interest in the subject property) to quiet title to the Property.

60.  The actions of MERS, the lenders and the trustee are deceptive, as plaintiff's property is encumbered by a Deed of Trust assigned to OneWest which is null and void because MERS has no valid recorded interest in plaintiffs' Deed of Trust, Note, or Property.

61.  Defendants' actions occur in the housing and mortgage markets, which are elements of trade and commerce.

62.  Defendants' actions have a profound impact on members of the public.  As a corporation that makes fraudulent assignments of loans across the county whose practices have come under question from many states and governing bodies, MERS and its methods present a risk to borrowers in Washington state (as well as across the country.)

63.  There is a causal link between the wrongful foreclosure engaged by the defendants and the injury to the plaintiff, as the defendants' actions have caused the plaintiff to be evicted from his home, which also served as his source of livelihood, given that his welding shop was located on the property.

AMENDED COMPLAINT - 9

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

64. As described above, given the language of the Deed of Trust, MERS is not the beneficiary to plaintiffs' mortgage (or any mortgage, for that matter). [2]

65. MERS itself admits it is not the beneficiary to any trust deed: in a September 2009 deposition, MERS President R.K. Arnold admitted that his company does not have a beneficial interest in any mortgage; that it does not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[3]

66. Having satisfied all elements of a consumer protection claim, Plaintiff has established a violation of such.

### VII. FOURTH CAUSE OF ACTION: Fraudulent Misrepresentation Against all Defendants and Any Other Party Claiming an Interest in the Property

67. Plaintiffs repeat and incorporate by reference each of the preceding paragraphs in the complaint as if fully set forth herein.

68. Actions for fraud and misrepresentation are authorized under Washington's Deed of Trust statute, RCW 61.24.127 (1)(a).

69. The actions of the defendant described amount to a fraud being perpetrated upon the plaintiff as defined in RCW 19.144.080:

> **It is unlawful for any person in connection with making, brokering, obtaining, or modifying a residential mortgage loan to directly or indirectly:**
> **(1)(a) Employ any scheme, device, or artifice to defraud or materially mislead any borrower during the lending process; (b) defraud or materially mislead any lender, defraud or materially mislead any person, or engage in any unfair or deceptive practice toward any person in the lending process; or (c) obtain property by fraud or material misrepresentation in the lending process.**
> **RCW 19.144.080 (1)(a)**

---

[2] *Mortgage Elec. Registration Sys., Inc. v. S.W. Homes of Ark.*, 301 S.W.3d 1, 4-5 (2009) ("MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt"); *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 788 (Neb. 2005) (MERS does not acquire mortgage loans" because "simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money"); *In re Walker*, Case No. 10-21656-E-11 (Bankr.E.D.Cal.2010) (unpublished opinion) (Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void . . . .").
[3] *See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

**AMENDED COMPLAINT** - 10

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

47

70.   MERS knowingly assigned rights it did not possess when it made the assignment Deed of Trust to OneWest, evidence of a scheme of fraudulent practice whereby members of the mortgage industry were able to subvert the legal requirements of proper assignments. This is clearly a violation of the Consumer Protection Act.

## VIII. CAUSES OF ACTION FOR FRAUDULENTLY PRODUCED DOCUMENTS IN VIOLATION OF WASHINTON CRIMINAL CODE

71.   Plaintiff hereby incorporates by reference all of the preceding paragraphs in the complaint as if fully set forth herein.

72.   The Plaintiff alleges, based upon information and belief that the defendants have used fraudulently produced documents affecting the legal title of property and the securitization of said property in the foreclosure upon said property. These fraudulent actions by the Defendants subject them to criminal penalty under the laws of Washington State, Title 9A, et seq.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.   For Declaratory Judgment ruling that only the record beneficiary of a Deed of Trust has the authority to assign a Deed of Trust.

2.   For Declaratory Judgment ruling that MERS is not/was not the beneficiary of Plaintiff's Trust Deed.

3.   For Declaratory Judgment ruling that the record ownership of any beneficial interest in a deed of trust may only be held by one party.

4.   For Declaratory Judgment ruling that the Assignment of Deed of Trust is void when it was executed and recorded by MERS, a non-beneficiary.

5.   For an Order directing all defendants to immediately rescind the above-identified false and/or misleading documents recorded on title to plaintiff's property.

6.   For an order quieting title by nullifying and releasing the Deed of Trust clouding title to Plaintiffs' Property.

7.   Ruling that Foreclosure was wrongful and the transaction should be unwound if possible; if not possible for a money award-in an amount to be proven at trial.

8.   A ruling that the Consumer Protection Act was violated with damages to be proven at trial

**AMENDED COMPLAINT** - 11

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

48

and an award of fees and costs under the CPA.

9. A ruling that the defendants' actions amounted to fraudulent misrepresentation and that Plaintiff is entitled to damages in an amount to be proven at trial as well as consequential damages and attorney fees and costs.

10. For appropriate criminal charges to be filed against the defendants.

11. In the event the court is inclined to rule against the plaintiff, an order staying this matter until the Washington State Supreme Court has ruled on the "MERS issue."

12. Any such other relief as the Court deems just including fees and costs.


DATED this ___31ˢᵗ___ day of October, 2011.


TRIAD LAW GROUP

Charles M. Greenberg, WSBA 17661
Attorney for Plaintiff
Triad Law Group
209 Dayton Street, Suite 105
Edmonds, WA 98020
Tel: 425-774-0138
Fax: 425-672-7867
Email: cmg@triadlawgroup.com


**AMENDED COMPLAINT** - 12

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

50

FILED

11 NOV 01 PM 3:37

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants,<br>          Plaintiffs,<br><br>vs.<br><br>ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc.,<br><br>          Defendants. | NO. 11-2-36324-4 KNT<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE** |

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEY OF RECORD.**

Pursuant to the Washington Rules of Evidence 201, plaintiff submits the following Request for Judicial Notice in support of their amended complaint. The following documents are proper for judicial notice as they are publicly recorded documents central to the causes of action contained in the plaintiff's amended complaint:

Attached as Exhibit "A" is a true and correct copy of the Consent Order executed by MERS and attached as Exhibit "B" is a copy of the Stipulation and Consent to the Issuance of a Consent Order. Attached as Exhibit "C" is a true and correct copy of an Order that was executed in Western District Court of Washington, Cause no: C09-0149-JCC. Attached as Exhibit "D" is a true and correct copy of an "Order certifying question to the Washington Supreme Court."

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE - 1**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA 98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

51

DATED this _31st_ day of October, 2011.

TRIAD LAW GROUP

Charles M. Greenberg, WSBA 17661
Attorney for Plaintiff
Triad Law Group
209 Dayton Street, Suite 105
Edmonds, WA 98020
Tel: 425-774-0138
Fax: 425-672-7867
Email: cmg@triadlawgroup.com

PLAINTIFF'S REQUEST FOR JUDICIAL
NOTICE - 2

# EXHIBIT A

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY
WASHINGTON, D.C.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

FEDERAL DEPOSIT INSURANCE CORPORATION
WASHINGTON, D.C.

OFFICE OF THRIFT SUPERVISION
WASHINGTON, D.C.

FEDERAL HOUSING FINANCE AGENCY
WASHINGTON, D.C.

In the Matter of:

MERSCORP, Inc., and the
Mortgage Electronic Registration Systems, Inc.,
Reston, Virginia

#2011-044

OCC No. AA-EC-11-20

Board of Governors
Docket Nos. 11-051-B-SC-1,
11-051-B-SC-2

FDIC-11-194b

OTS No. 11-040

FHFA No. EAP-11-01

CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller"), through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System, Washington, D.C. ("Board of Governors"), the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision ("OTS"), and the Federal Housing Finance Agency ("FHFA") (collectively

---

the "Agencies"), as part of an interagency horizontal review of major residential mortgage servicers and mortgage service providers, have conducted an examination of MERSCORP, Inc. ("MERSCORP"), and of its wholly-owned subsidiary corporation, Mortgage Electronic Registration System, Inc., ("MERS"), both of which provide various services to financial institutions related to tracking and registering residential mortgage ownership and servicing, acting as mortgagee of record in the capacity of nominee for lenders, and initiating foreclosure actions. The Agencies have identified certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks to MERSCORP and MERS, and to the participating Members. Members are institutions that are MERSCORP's and MERS' services and have agreed to abide by MERSCORP's Rules of Membership (the "Rules"). The Members include depository institutions regularly examined by, or subsidiaries or affiliates of depository institutions subject to examination by the OCC, the Board of Governors, the FDIC, the OTS, and other appropriate Federal banking agencies, as defined by subsection 1(b)(1) of the Bank Service Company Act, 12 U.S.C. § 1863(b)(1), and Fannie Mae and Freddie Mac, which are subject to examination by the FHFA, (collectively "Examined Members"). The Agencies have informed MERS and MERSCORP of the findings resulting from the examination. MERS and MERSCORP have begun implementing procedures to remediate the practices addressed in this Order.

MERS and MERSCORP, by and through their duly elected and acting Boards of Directors (collectively the "Boards"), have executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13, 2011 ("Stipulation and Consent"), that is accepted by the Agencies. By this Stipulation and Consent, which is incorporated by reference, MERS and MERSCORP have consented to the issuance of this Consent Cease and Desist Order ("Order"),

pursuant to 12 U.S.C. §§ 1818(b), 1867(c)-(d), and 4631, by the Agencies, consistent with the Stipulation and Consent. MERS and MERSCORP have committed to take all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the Agencies.

## ARTICLE I
## JURISDICTION

For purposes of this Consent Order:

(1) MERS and MERSCORP are providers of services to Examined Members within the meaning of 12 U.S.C. § 1867(c).

(2) MERS and MERSCORP are each an "institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u) by virtue of MERS acting as agent for lenders (who include Examined Members) with respect to serving as mortgagee in a nominee capacity for the lender, and are such an "entity-affiliated party" within the meaning of 12 U.S.C. § 4502(11) by virtue of MERS acting as agent for Fannie Mae and Freddie Mac with respect to serving as mortgagee in a nominee capacity for the owner of residential mortgage loans.

(3) The OCC, the Board of Governors, the OTS, and the FDIC examined the services provided by MERS and MERSCORP to Examined Members pursuant to the provisions of 12 U.S.C. § 1867(c), on behalf of themselves and other appropriate Federal banking agencies as defined in 12 U.S.C. § 1861(b)(1).

(4) The Agencies have authority to enter into this Consent Order pursuant to 12 U.S.C. §§ 1818(b), 1867(c)-(d), and 4631.

## ARTICLE II
## AGENCIES' FINDINGS

The Agencies find, and MERS and MERSCORP neither admit nor deny, the following:

(1) MERS is a wholly-owned subsidiary of MERSCORP. MERSCORP's shareholders include federally regulated financial institutions that own and/or service residential mortgages, including Examined Members, and other primary and secondary mortgage industry participants.

(2) MERSCORP operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interests or rights. There are approximately 5,000 participating Members, of which 3,000 are residential mortgage servicers. Members register loans and report transfers, foreclosures, and other changes to the status of residential mortgage loans on the MERS System. There are currently approximately 31 million active residential mortgage loans registered on the MERS System. Examined Members receive a substantial portion of the services provided by MERSCORP and MERS.

(3) MERS serves as mortgagee of record and nominee for the participating Members in local land records. MERS takes action as mortgagee through documents executed by "certifying officers" of MERS. MERS has designated these individuals, who are officers or employees of Members or certain third-parties who have contractual relationship with Members, as officers of MERS. By virtue of these designation, the certifying officers execute legal documents in the name of MERS, such as mortgage assignments and lien releases.

(4) In connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related servicers"), MERS and MERSCORP:

(a) have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

(b) have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

(5) By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe [or] unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks.

Pursuant to the authority vested in them by the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1818(b), the Bank Service Company Act, 12 U.S.C. § 1867(c)-(d), and the Federal Housing Enterprises Financial Safety and Soundness Act, 12 U.S.C. § 4631, the Agencies hereby ORDER that:

ARTICLE III
COMPLIANCE COMMITTEE

(1) Within twenty (20) days of this Order, the Boards of Directors of MERSCORP and MERS (the "Boards") shall each establish and thereafter maintain a Compliance Committee of at least three (3) directors, of which at least two (2) may not be employees or officers of MERS or MERSCORP or any of their subsidiaries or affiliates. In the event of a change of the

membership, the name of any new committee member shall be submitted to the OCC Deputy Comptroller for Large Bank Supervision ("Deputy Comptroller"). The Compliance Committee shall be responsible for monitoring and coordinating MERS' and MERSCORP's compliance with the terms and provisions of this Order. The Compliance Committee shall meet at least monthly and maintain minutes of its meetings.

(2) Within ninety (90) days of this Order, and within thirty (30) days of the end of each calendar quarter thereafter, the Compliance Committee shall submit a written progress report to the Boards setting forth in detail its actions taken to comply with each Article of this Consent Order, and the results and status of those actions.

(3) The Boards shall forward a copy of the Compliance Committee's report, with any additional comments by the Boards, to the Deputy Comptroller and the OCC Examiner-in-Charge within ten (10) days of receiving such report.

ARTICLE IV
ACTION PLAN

(1) Within ninety (90) days of this Order, MERS and MERSCORP shall jointly develop and submit to the Deputy Comptroller an acceptable plan containing a complete description of the actions that are necessary and appropriate to achieve compliance with the terms and provisions of this Order ("Action Plan"), as well as the resources to be devoted to the planned actions, with respect to services provided to Examined Members. In the event the Deputy Comptroller requests MERS or MERSCORP to revise the Action Plan, they shall immediately make the requested revisions and resubmit the Action Plan to the Deputy Comptroller. Following acceptance of the Action Plan by the Deputy Comptroller, MERS and

MERSCORP shall not take any action that would constitute a significant deviation from, or material change to the requirements of the Action Plan, or this Order, unless and until MERS or MERSCORP have received a prior written determination of no supervisory objection from the Deputy Comptroller.

(2) The Boards shall ensure that MERS and MERSCORP achieve and thereafter maintain compliance with this Order, including, without limitation, successful implementation of the Action Plan. The Boards shall further ensure that, upon implementation of the Action Plan, MERS and MERSCORP achieve and maintain effective residential mortgage and foreclosure-related services on behalf of Examined Members, as well as associated risk management, compliance, quality control, audit, training, staffing, and related functions. In order to comply with these requirements, the Boards shall:

(a) require the timely reporting by MERS and MERSCORP management of such actions taken to comply with this Order and/or directed by either Board to be taken pursuant to this Order;

(b) follow-up on any compliance issues with such actions in a timely and appropriate manner; and

(c) require corrective action be taken in a timely manner for any non-compliance with such actions.

(3) The Action Plan shall address, at a minimum:

(a) the capability of the Boards and senior management to ensure that MERS and MERSCORP are operated in a safe and sound manner in accordance with applicable laws, regulations and requirements of this Order;

-7-

MERS Consent Order

(b) development and implementation of a strategic plan to include a comprehensive review of business operations, including the risks associated with each business line, and recommendations to implement the strategic plan;

(c) consistent with the strategic plan, development and implementation of a financial plan to ensure that MERSCORP and MERS have adequate financial strength to support business operations related to Examined Members. The financial plan, at a minimum, shall address:

(i) any need for additional capital, including the amount and source of capital;

(ii) the identification, measurement, monitoring and control of funding and liquidity risk; and

(iii) a profit and budget plan to include specific goals to reduce discretionary expenses and improve and sustain earnings, as well as maintain adequate reserves for contingency risks and liabilities;

(d) development and implementation of a comprehensive litigation strategy to effectively manage lawsuits and legal challenges involving MERS and MERSCORP, regardless of whether MERSCORP or MERS is a named party, including early identification and tracking of such lawsuits and challenges;

(e) development and implementation of a communication plan to communicate effectively and in a timely manner with MERSCORP's shareholders, Members including Examined Members, and relevant external parties;

(f) development and implementation of a compliance and quality assurance program for ensuring that Examined Members implement and follow all of the Rules, including

-8-

MERS Consent Order

# ARTICLE V

## BOARD AND MANAGEMENT SUPERVISION

(1)     Within thirty (30) days from the effective date of this Order, MERSCORP and MERS shall engage an independent third party, acceptable to the Deputy Comptroller, with the appropriate expertise and qualifications to analyze and assess the directors, officers, management and staffing needs with respect to any and all services provided by MERSCORP and MERS to Examined Members, in order to operate MERS and MERSCORP in a safe and sound master and achieve compliance with this Order. The engagement shall provide that the required analysis and assessment be completed and summarized in a written report to the Boards ("Management Report") within sixty (60) days of the third party's engagement, with a copy simultaneously delivered to the Deputy Comptroller. At a minimum, the Management Report shall:

(a)     Identify the type and number of positions needed appropriately to manage and supervise all services provided to Examined Members, including, but not limited to; (i) the orderly and expeditious transitioning of Examined Members onto the CRMS; (ii) the enhanced communication and coordination with Examined Members required by the Communications Plan; and (iii) registration or tracking systems, assignment and/or foreclosure services, detailing any vacancies and additional staffing needs with appropriate consideration to the scope and complexity of the services provided, for the number of Examined Members and MERS certifying officers who will need to complete the certification process, and for the size of the portfolios for which these services are provided;

(b)     Identify the type and number of officer and staff positions needed to ensure compliance with all applicable federal and state laws and regulations and material

adherence to the requirements set forth in MERS Announcement 2011-01, dated February 16, 2011;

(c)     development and implementation of a plan to ensure that MERS certifying officers are transitioned expeditiously onto the Corporate Resolution Management System ("CRMS") in accordance with MERS' current certifying officer policy and process;

(d)     development and implementation of appropriate standards to maintain separation of corporate functions between MERS and MERSCORP;

(i)     review of the effectiveness of the Rules, and related Procedures, Terms and Conditions to determine when, if any, additions, amendments, or deletions are appropriate;

(ii)     development and implementation of enhanced information reporting practices to senior management from lower levels of each organization, and from senior management to the Boards to ensure that significant issues are properly identified and escalated, and that corporate actions are considered, taken in a timely fashion, and properly documented;

(3)     any Matter Requiring Attention in the OCC Supervisory Letter No. MERS 2011-01, dated January 19, 2011, that addresses an issue that is not otherwise covered by provisions of this Order; and

(f)     development of contingency plans to address issues that arise with respect to any of the foregoing elements of the Action Plan, including plans that address operational continuity issues in the normal course of business and in a stressed environment.

(4)     The Action Plan shall specify timelines for completion of each of the requirements of this Order. The timelines in the Action Plan shall be consistent with any deadlines set forth in this Order.

contractual requirements, as well as to implement any newly established or revised plans, policies, procedures, processes and systems required by this Order, detailing any vacancies, additional needs and/or unit re-alignments required with appropriate consideration to the scope and complexity of the services provided as well as the size of the portfolios for which these services are provided;

(c)   identify and address the appropriateness of the duties, responsibilities, authority and accountability of each professional position, giving due consideration to the relevant knowledge, skills, abilities, and experience of the incumbent (if any);

(d)   present a clear and concise description of the relevant knowledge, skills, abilities, and experience necessary for each officer position, including delegations of authority and performance objectives, including whether the incumbent ((if any) has the requisite knowledge, skills, abilities, and experience for each position;

(e)   recommend a plan to recruit and retain director, officers, management and staff consistent with the independent third party's analysis and assessment;

(f)   recommend any reorganization or realignment of direction, officers, management and staff consistent with the independent third party's analysis and assessment;

(g)   recommend any additional training and development needs as well as a plan to provide such training and development to appropriate direction, officers, management and staff; and

(h)   recommend procedures to periodically review and update the Management Plan required by subparagraph (3) below and meets the performance of all direction, officers, management and staff.

(2)   MERSCORP and MERS shall provide a copy of the proposed engagement/ lease or contract with the third party to the Deputy Comptroller for review and non-objection prior to entering into the engagement.

(3)   Within thirty (30) days of receipt of the Management Report, MERSCORP and MERS shall jointly develop a written plan of action (the "Management Plan") in response to each recommendation contained in the Management Report and a time frame for completing each action. The Management Plan and any subsequent modification(s) thereto shall be submitted to the Deputy Comptroller for review and non-objection.

(4)   The Boards shall immediately establish a schedule of regular Board meetings to be held at least once every calendar quarter.

## ARTICLE VI

## COMMUNICATIONS RELATING TO LEGAL PROCEEDINGS

(1)   Within sixty (60) days of this Order, MERS and MERSCORP shall jointly develop and submit to the Deputy Comptroller a plan for communicating with Members concerning significant legal proceedings or issues. The plan shall include:

(a)   a process for notifying and informing Examined Members concerning significant legal proceedings and legal issues that relate to the functioning of MERS, MERSCORP, or the Examined Members' interests with respect to MERS or MERSCORP, including, but not limited to significant (favorable or adverse decisions, within a short time period after the issue arises or a decision is issued;

(b) a process that provides sufficient incentives for Members to inform MERSCORP and MERS of the filing of all lawsuits brought in MERS' name or to which MERS is a named party, and periodically update MERS concerning the status of such lawsuit;

(c) a process to track all legal proceedings brought in MERS' name, in which MERS is a named party, or which involve legal issues that affect the interests of MERS, MERSCORP, or Examined Members with respect to MERSCORP and MERS;

(d) a process to ensure an appropriate response by MERS to legal proceedings brought in MERS' name, in which MERS is a named party, or which involve legal issues that affect the interests of MERS, MERSCORP, or Examined Members with respect to MERSCORP and MERS;

(e) proposed revisions as necessary to the MERSCORP Rules to implement these processes.

(2)   Within thirty (30) days of this Order, MERSCORP and MERS shall establish Legal Risk Subcommittees of the Boards, which shall make regular reports to the Boards on outstanding legal issues and pending litigation that affect the interests of MERS, MERSCORP, and Examined Members with respect to MERSCORP and MERS, and provides analysis and recommendations concerning litigation contingency reserves.

ARTICLE VII

CERTIFYING OFFICERS

(1)   Within sixty (60) days of this Order, MERS shall prepare and submit a plan to the Deputy Comptroller to strengthen its governance processes applicable to MERS certifying officers with respect to Examined Members. The plan shall include, but not be limited to:

MERS Consent Order                    -13-

(a) policies and processes to designate or certify individuals as authorized MERS certifying officers, and that only such individuals act in such capacity;

(b) policies, processes and resources to track the identity and activities of MERS certifying officers and to ensure their compliance with the Rules and related requirements, including the requirements of the CRMS;

(c) policies, processes and resources to register third-party MERS certifying officers who are acting for Examined Members;

(d) policies, processes and resources to ensure the adequacy and appropriateness of making for certifying officers;

(e) policies, processes, and resources to ensure that Examined Members comply with MERS Membership Rule 8 and MERS Announcement 2011-01; and

(f) policies, processes, and resources to ensure that the Examined Members and Third parties can quickly and accurately determine if specific individuals are designated to act as authorized MERS certifying officers.

ARTICLE VIII

QUALITY ASSURANCE AND DATA INTEGRITY

(1)   Within sixty (60) days of this Order, MERS and MERSCORP shall jointly prepare and submit a plan to the Deputy Comptroller to strengthen its policies, processes, resources and controls for data standards and quality assurance of information submitted to and contained in MERSCORP data systems. The plan shall include, but not be limited to:

(a) an assessment and determination of which data elements are necessary to MERS and MERSCORP operations and should be mandatory reporting requirements

MERS Consent Order                    -14-

("mandatory reporting fields") for Examined Members. The plan shall include elimination of collection of existing data elements currently reported by Members that are not reasonably related to MERS or MERSCORP operations;

(b) policies, processes and resources to ensure the accuracy and reliability of data reported to MERSCORP, including but not limited to system-to-system reconciliations of all MERS mandatory reporting fields, frequent capture of all reject/warning reports associated with registrations, transfers, and status updates on open-item aging reports, and an accurate determination of foreclosures pending in MERS' name;

(c) adoption or revision of an adequate written quality assurance procedures manual and processes to assure appropriate implementation of the quality assurance program described in the quality assurance procedures manual;

(d) policies, processes and resources to ensure that Examined Members comply with MERSCORP approved quality assurance plans submitted to MERSCORP by Examined Members and provide to MERSCORP an annual independent report demonstrating their adherence to their MERSCORP approved quality assurance program, including submission of all mandatory MERS data reporting fields, and processes for system-to-system reconciliation and reject/warning error correction.

## ARTICLE IX

### REGISTRY

(1) Within ninety (90) days from the effective date of this Order, the MERSCORP Board shall obtain an independent, external review of and recommendations regarding the eRegistry system of recording electronic notes. The review and recommendations shall consider

whether appropriate policies, procedures, and operating controls are in place to ensure effective operation of eRegistry. Within sixty (60) days of completion of the review and recommendations required by this Article, MERSCORP shall submit to the Deputy Comptroller for review and supervisory non-objection a plan describing actions necessary to implement any changes to applicable policies, procedures and controls as a result of the findings of the audit. In the event the Deputy Comptroller asks MERSCORP to revise the plan required by this Article, MERSCORP shall immediately make the requested revisions and resubmit the plan.

## ARTICLE X

### COMMUNICATIONS PLAN

(1) Within sixty (60) days from the effective date of this Order, MERSCORP shall develop, adopt and implement a plan designed to enhance communications and coordination with the Examined Members with respect to their duties and responsibilities as set forth in the Rules and related Procedures, Terms and Conditions ("Communications Plan"). The Communications Plan shall, at a minimum, be designed to ensure that all Examined Members and appropriate personnel within an Examined Member are aware of, and can comply with current Rules and related Procedures, Terms and Conditions and any new or revised Rules or related Procedures, Terms and Conditions on an ongoing basis and to ensure that Examined Members and appropriate personnel within or retained by an Examined Member are aware of, and are able to comply with, the requirement to advise MERSCORP of the initiation of litigation naming or otherwise involving MERS, MERSCORP and/or one of their subsidiaries and coordinate the defense or prosecution of such litigation with MERSCORP.

sufficient to validate compliance with this Order, based on a testing program acceptable to the OCC that includes, if required by the OCC, validation by third-party independent consultants acceptable to the Deputy Comptroller. The Deputy Comptroller may, in writing, discontinue the requirement for progress reports or modify the reporting schedule.

(6)     All communication regarding this Order shall be sent to:

(a)     Joseph H. Evers
        Deputy Comptroller for Large Bank Supervision
        Office of the Comptroller of the Currency
        250 E Street, SW
        Washington, DC 20219

With copy to:

(b)     Stephen Jackson
        National Bank Examiner
        Office of the Comptroller of the Currency
        250 E Street, SW
        Washington, DC 20219

## ARTICLE XII

### COMPLIANCE AND EXTENSIONS OF TIME

(1)     If MERS or MERSCORP contend that compliance with any provision of this Order would not be feasible or legally permissible, or requires an extension of any timeframe within this Order, the Boards shall submit a written request to the Deputy Comptroller asking for relief. Any written request submitted pursuant to this Article shall include a statement setting forth in detail the special circumstances that prevent either MERS or MERSCORP from complying with a provision, that require the Deputy Comptroller to exempt either of them from a provision, or that require an extension of a timeframe within this Order.

---

## ARTICLE XI

### APPROVAL, IMPLEMENTATION AND REPORTS

(1)     MERS and MERSCORP shall submit the written assessments, reports and plans required by this Order for review and written determination of no supervisory objection to the Deputy Comptroller and within the applicable time periods set forth in the Order. MERS and MERSCORP shall adopt the plans required by this Order upon receipt of a determination of no supervisory objection from the OCC, and shall immediately make any revisions requested by the Deputy Comptroller. Upon adoption, MERS and MERSCORP shall immediately implement the plans required by this Order and thereafter fully comply with them.

(2)     During the term of this Order, the required plans, programs, policies and procedures shall not be amended or rescinded in any material respect without the prior written approval of the Deputy Comptroller.

(3)     During the term of this Order, MERS and MERSCORP shall revise the required plans, programs, policies and procedures as necessary to incorporate new or changes to applicable federal and state laws, rules, regulations, guidelines, court orders, and commercial or other requirements.

(4)     The Boards shall ensure that MERS and MERSCORP have processes, personnel, resources, and control systems to ensure implementation of and adherence to the plans, programs, policies and procedures required by this Order.

(5)     Within thirty (30) days after the end of each calendar quarter following the date of this Order, MERS and MERSCORP shall submit to the Deputy Comptroller a written progress report detailing the form and manner of all actions taken to secure compliance with the provisions of this Order and the results thereof. The progress report shall include information

(2) All such requests shall be accompanied by relevant supporting documentation, and to the extent requested by the Deputy Comptroller, a sworn affidavit or affidavits setting forth any other facts upon which MERS or MERSCORP relies. The Deputy Comptroller's decisions concerning a request is final and not subject to further review.

## ARTICLE XIII

### OTHER PROVISIONS

(1) Although this Order requires MERS and MERSCORP to submit certain actions, reports and plans for the review or a written determination of no supervisory objection by the Deputy Comptroller, the Boards have the ultimate responsibility for proper and sound management of MERS and MERSCORP.

(2) In each instance in this Order in which MERS or MERSCORP are required to ensure adherence to, and undertake to perform certain obligations, it is intended to mean that the Boards shall:

(a) authorize and adopt such actions on behalf of MERS and MERSCORP as may be necessary for them to perform their obligations and undertakings under the terms of this Order;

(b) require the timely reporting of MERS and MERSCORP management of such actions directed by either Board to be taken under the terms of this Order;

(c) follow-up on any material non-compliance with such actions in a timely and appropriate manner; and

(d) require corrective action be taken in a timely manner of any material non-compliance with such actions.

(3) If, at any time, the Comptroller, the Board of Governors, the FDIC, the OTS, or the FHFA deems it appropriate in fulfilling the responsibilities placed upon them by the several laws of the United States to undertake any action affecting MERS or MERSCORP, nothing in this Order shall in any way inhibit, estop, bar or otherwise prevent either any of them from so doing.

(4) This Order is and shall become effective upon its execution by the Appendix through their authorized representatives whose hands appear below. The Order shall remain effective and enforceable, except to the extent that, and until such time as, any provision of this Order shall be amended, suspended, waived, or terminated in writing by the Comptroller.

(5) Any time limitations imposed by this Order shall begin to run from the effective date of this Order, as shown below, unless the Order specifies otherwise

(6) This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. §§ 1818(b), 1867(d), and 4631 and expressly does not form, and may not be construed to form, a contract binding the Comptroller, the Board of Governors, the FDIC, the OTS, or the FHFA or the United States. Without limiting the foregoing, nothing in this Order shall affect any action against MERS, MERSCORP or officers, directors, or employees by a financial regulatory agency, the United States Department of Justice or any other law enforcement agency, to the extent permitted under applicable law.

(7) The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(8) Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any

benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

(9)   The provisions of this Order shall be binding upon MERSCORP and MERS and their successors and assigns.

(10)   MERS and MERSCORP consent to the issuance of this order before the filing of any notices, or taking of any testimony or adjudication, and solely for the purpose of settling this matter without a formal proceeding being filed.

IT IS SO ORDERED, this 13th day of April, 2011.

OFFICE OF THE COMPTROLLER OF THE CURRENCY

By: /s/Joseph H. Evers
     Joseph H. Evers
     Deputy Comptroller for Large Bank Supervision

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

By: /s/Jennifer J. Johnson
     Jennifer J. Johnson
     Secretary of the Board

MERS Consent Order                                        -21-

FEDERAL DEPOSIT INSURANCE CORPORATION

By: /s/Thomas J. Dujenski
     Thomas J. Dujenski
     Regional Director
     Atlanta Regional Office

OFFICE OF THRIFT SUPERVISION

By: /s/Thomas A. Barnes
     Thomas A. Barnes
     Deputy Director
     Examinations, Supervision and Consumer Protection

FEDERAL HOUSING FINANCE AGENCY

By: /s/Christopher H. Dickerson
     Christopher H. Dickerson
     Acting Deputy Director for Enterprise Regulation

MERS Consent Order                                        -22-

# EXHIBIT B

99

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY
WASHINGTON, D.C.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

FEDERAL DEPOSIT INSURANCE CORPORATION
WASHINGTON, D.C.

OFFICE OF THRIFT SUPERVISION
WASHINGTON, D.C.

FEDERAL HOUSING FINANCE AGENCY
WASHINGTON, D.C.

In the Matter of:

MERSCORP, Inc., and the
Mortgage Electronic Registration Systems, Inc.,
Reston, Virginia

OCC No. AA-EC-11-20
Board of Governors
Docket Nos. 11-051-B-SC-1,
11-051-B-SC-2

FDIC-11-194b

OTS No. 11-040

FHFA No. EAP-11-01

STIPULATION AND CONSENT TO THE ISSUANCE
OF A CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller" or "OCC"), and the Board of Governors of the Federal Reserve System ("Board of Governors"), the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision ("OTS"), and the Federal Housing Finance Agency ("FHFA") (collectively

MERS Stipulation

the "Agencies") intend to impose a cease and desist order on the Mortgage Electronic Registration Systems, Inc. ("MERS"), and its parent company, MERSCORP, Inc. ("MERSCORP"), pursuant to 12 U.S.C. § 1818(b) & 12 U.S.C. § 1867(c)-(d), and 12 U.S.C. § 4631, for certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks t MERSCORP and MERS, and to MERSCORP's members.

MERS and MERSCORP, in the interest of compliance and cooperation, enter into this Stipulation and Consent to the Issuance of a Consent Order ("Stipulation") and consent to the issuance of a Consent Order, dated April 13, 2011 ("Consent Order");

In consideration of the above premises, the Agencies, through their authorized representatives, and MERS and MERSCORP, through their duly elected and acting Boards of Directors, stipulate and agree to the following:

ARTICLE I
JURISDICTION

For purposes of this Stipulation and the Consent Order:

(1)   MERS and MERSCORP are providers of services to depository institutions regularly examined by, or subsidiaries or affiliates of depository institutions subject to examination by the OCC, the Board of Governors, the FDIC, the OTS, and other appropriate Federal banking agencies, within the meaning of the Bank Service Company Act of 1962, 12 U.S.C. § 1867(c).

(2)   MERS and MERSCORP are each an "institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u), and are each an "entity-affiliated party" within the meaning of 12 U.S.C. § 4502(11).

MERS Stipulation

2

(3) The OCC, the Board of Governors, FDIC and OTS examined the services provided by MERS and MERSCORP to national banks and other financial institutions pursuant to the provisions of 12 U.S.C. § 1867(c).

(4) The Agencies have authority to enter into this Consent Order pursuant to 12 U.S.C. §§ 1818(b), 1867(c)-(d) and 4631.

### ARTICLE II
### AGREEMENT

(1) MERS and MERSCORP, without admitting or denying any wrongdoing, consent and agree to issuance of the Consent Order by the Agencies.

(2) MERS and MERSCORP consent and agree that the Consent Order shall (a) be deemed an "order issued with the consent of the . . . institution-affiliated part[ies]" pursuant to 12 U.S.C. § 1818(h)(2) and an order to which an entity-affiliated party consents pursuant to 12 U.S.C. § 4635(a)(4); and (b) become effective upon its execution by the Agencies through their authorized representatives, and (c) be fully enforceable by the Agencies pursuant to 12 U.S.C. §§ 1818(i) and 1867(d), and 12 U.S.C. § 4631(f) and 4635.

(3) Notwithstanding the absence of mutuality of obligation, or of consideration, or of a contract, the Agencies may enforce any of the commitments or obligations herein undertaken by MERS or MERSCORP under their supervisory powers, including 12 U.S.C. §§ 1818(i) and 1867(c)-(d), and 12 U.S.C. §§ 4631 and 4635, and not as a matter of contract law. MERS and MERSCORP expressly acknowledge that MERS, MERSCORP, and the Agencies have no intention to enter into a contract.

MERS Stipulation

3

(6) MERS and MERSCORP declare that no separate promise or inducement of any kind has been made by the Agencies, or by their agents or employees, to cause or induce MERS or MERSCORP to consent to the issuance of the Consent Order and/or execute the Consent Order.

(5) MERS and MERSCORP expressly acknowledge that no officer or employee of the Agencies has statutory or other authority to bind the United States, the United States Treasury Department, the Agencies, or any other federal bank regulatory agency or entity, or any officer or employee of any of those entities to a contract affecting the Agencies' exercise of their supervisory responsibilities.

(6) The terms and provisions of the Stipulation and the Consent Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest. Nothing in this Stipulation or the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Consent Order.

### ARTICLE III
### WAIVERS

(1) MERS and MERSCORP, by consenting to this Stipulation, waive:
(a) the issuance of a Notice of Charges pursuant to 12 U.S.C. §§ 1818(b) and 4631(a);
(b) any and all procedural rights available in connection with the issuance of the Consent Order;
(c) all rights to a hearing and a final agency decision pursuant to 12 U.S.C. §§ 1818(b) and (h), 12 U.S.C. § 1867, 12 C.F.R. Part 19, and 12 U.S.C. § 4631(a)(c);

MERS Stipulation

4

(d) all rights to seek any type of administrative or judicial review of the Consent Order;

(e) any and all claims for fees, costs or expenses against the Agencies, or any of their agents or employees, related in any way to this enforcement matter or this Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(f) any and all rights to challenge or contest the validity of the Consent Order.

## ARTICLE IV
## OTHER PROVISIONS

(1) The provisions of this Stipulation shall not inhibit, estop, bar, or otherwise prevent the Agencies from taking any other action affecting MERS or MERSCORP if, at any time, it deems it appropriate to do so to fulfill the responsibilities placed upon it by the several laws of the United States of America.

(2) Nothing in this Stipulation shall preclude any proceedings brought by the Agencies to enforce the terms of this Consent Order, and nothing in this Stipulation constitutes, and neither MERS nor MERSCORP shall contend that it constitutes, a waiver of any right, power, or authority of any other representative of the United States or an agency thereof, including, without limitation, the United States Department of Justice, to bring other actions deemed appropriate.

MERS Stipulation

(3) The terms of the Stipulation and the Consent Order are not subject to amendment or modification by any extraneous expression, prior agreements or prior arrangements between the parties, whether oral or written.

IN TESTIMONY WHEREOF, the undersigned, authorized by the signatory Agencies as their representatives, have hereunto set their hands on behalf of the Agencies.

OFFICE OF THE COMPTROLLER OF THE CURRENCY

/s/Joseph H. Evers                        April 13, 2011
                                          Date
By: Joseph H. Evers
    Deputy Comptroller for
    Large Bank Supervision

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

/s/Jennifer J. Johnson                    April 13, 2011
                                          Date
By: Jennifer J. Johnson
    Secretary of the Board

FEDERAL DEPOSIT INSURANCE CORPORATION

/s/Thomas J. Dujenski                     April 13, 2011
                                          Date
By: Thomas J. Dujenski
    Regional Director
    Atlanta Regional Office

MERS Stipulation

OFFICE OF THRIFT SUPERVISION

/s/Thomas A. Barnes _____ April 13, 2011
By: Thomas A. Barnes                    Date
Deputy Director
Examinations,
Supervisions and
Consumer Protection

FEDERAL HOUSING FINANCE AGENCY

/s/Christopher H. Dickerson _____ April 13, 2011
By: Christopher H. Dickerson            Date
Acting Deputy Director for Enterprise Regulation

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting Boards of

Directors of MERS and MERSCORP, have hereunto set their hands on behalf of MERS

and MERSCORP.

For MERSCORP:

/s/Diane Citron _____ April 12, 2011          /s/Steven Stein _____ April 12, 2011
Diane Citron                     Date                      Steven Stein                     Date
MERSCORP                                                   MERSCORP

/s/John Courson _____ April 12, 2011          /s/Marianne Sullivan _____ April 12, 2011
John Courson                     Date                      Marianne Sullivan                Date
MERSCORP                                                   MERSCORP

/s/Joe Jackson _____ April 12, 2011           /s/Larry Washington _____ April 12, 2011
Joe Jackson                      Date                      Larry Washington                 Date
MERSCORP                                                   MERSCORP
MERS Regulator

For MERS:

                                                          /s/Brian McCrackin _____ April 12, 2011
                                                          Brian McCrackin                  Date
                                                          MERSCORP

                                                          /s/Karl Pfisterhauer _____ April 12, 2011
                                                          Karl Pfisterhauer                Date
                                                          MERSCORP

                                                          /s/Robert Reynolds _____ April 12, 2011
                                                          Robert Reynolds                  Date
                                                          MERSCORP

                                                          /s/Joseph Rossi _____ April 12, 2011
                                                          Joseph Rossi                     Date
                                                          MERSCORP

MERS Regulator

7

70



/s/John Couron
John L Couron
MERS
April 12, 2011
Date

/s/Edward Kramer
Edward Kramer
MERS
April 12, 2011
Date

/s/Kurt Pfotenhauer
Kurt Pfotenhauer
MERS
April 12, 2011
Date

/s/Marianne Sullivan
Marianne Sullivan
MERS
April 12, 2011
Date

/s/Joseph Rossi
Joseph Rossi
MERS
April 12, 2011
Date

MERS Signatories

# EXHIBIT C

THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

10  KRISTEN BAIN,                              Case No. C09-0149-JCC

11                  Plaintiff,                 ORDER

12          v.

13  ONEWEST BANK, F.S.B; DEUTSCHE
    BANK NATIONAL TRUST COMPANY;
14  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC;
15  REGIONAL TRUSTEE SERVICES
    CORPORATION;
16
                    Defendants.
17

18          This matter comes before the Court on Defendant Mortgage Electronic Registration

19  Systems, Inc's ("MERS") motion for summary judgment (Dkt. No. 88), Defendant Regional

20  Trustee Services Corporation's ("Regional") motion for summary judgment (Dkt. No. 91),

21  MERS's supplemental motion for summary judgment (Dkt. No. 120), Regional's supplemental

22  motion for summary judgment (Dkt. No. 122), Defendant Deutsche Bank National Trust

23  Company's ("Deutsche Bank") motion for partial summary judgment (Dkt. No. 131),

24  Defendant OneWest Banks, F.S.B.'s ("OneWest") motion for summary judgment (Dkt. No.

25  132), and Deutsche Bank's additional motion for partial summary judgment (Dkt. No. 146), as

26  well as the parties' various responses to the Court's order to show cause (Dkt. Nos. 140–44).

ORDER, C09-0149-JCC
PAGE - 1

1  Having thoroughly considered the parties' briefing and the relevant record, the Court grants in

2  part several of Defendants' motions for summary judgment and stays this action pending the

3  Washington Supreme Court's decision in *Vinluan v. Fidelity National Title & Escrow Co.*, No.

4  10-2-27688-2 SEA (King Cnty. Superior Ct. filed July 29, 2010).

5  I.      BACKGROUND

6          Plaintiff, a young woman with severe ADD, purchased a condominium in Everett,

7  Washington, that she could not afford. Soon afterward, she defaulted on her mortgage

8  payments. After the initiation of nonjudicial foreclosure proceedings, Plaintiff filed suit in

9  Washington state court alleging that Defendants—a group of lending organizations, banks, and

10 service providers—committed common-law torts and violated federal and Washington statutes

11 in connection with their issuance and administration of a deed of trust and their subsequent

12 attempted foreclosure on Plaintiff's home. (Compl. (Dkt. No. 2 at 49.)

13         Plaintiff executed a promissory note and deed of trust on March 9, 2007. IndyMac Bank,

14 F.S.B. ("IndyMac"), was the lender on the promissory note. The deed of trust listed MERS as the

15 beneficiary. The original trustee was Stewart Title Guaranty Co. After Plaintiff became delinquent

16 on her payments, she received a Notice of Default from Regional. (Dkt. No. 112 at 5.) Thereafter,

17 she received a Notice of Trustee's Sale. (*Id.*) Plaintiff successfully sought a restraining order in

18 state court preventing the foreclosure. (Dkt. No. 1 at 19.)

19         Defendants thereafter removed the matter to this Court. (Notice of Removal 1–2 (Dkt.

20 No. 1).)[1] On stipulation of the parties, the Court dismissed Plaintiff's claims against Defendant

21 Metropolitan Mortgage Group, Inc. (Dkt. No. 31.) On March 11, 2010, the Court granted

22 Lender Processing Services' motion for summary judgment and dismissed Plaintiff's claims

23 _____

24         [1] Removal jurisdiction was predicated on the federal questions in the complaint as well
    as the fact that IndyMac Bank, F.S.B., one of the Defendants, went into receivership in 2008
25 with the Federal Deposit Insurance Corporation appointed as its receiver and successor in
    interest. Any civil suit in which the Federal Deposit Insurance Corporation, in any capacity, is
26 a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

ORDER, C09-0149-JCC
PAGE - 2

73

1    against it. (Dkt. No. 80.) And on June 9, 2010, the Court granted the Federal Deposit Insurance

2    Corporation's motion for summary judgment and dismissed Plaintiff's claims against it. (Dkt.

3    No. 108.) These actions left MERS and Regional as the only remaining defendants. Both

4    parties thereafter filed separate motions for summary judgment. (Dkt. Nos. 88, 91.)

5          While those motions were pending, recently produced documents led Plaintiff to

6    believe that Deutsche Bank was the holder of the promissory note secured by the deed of trust

7    and serviced by OneWest. The Court granted Plaintiff's motion to amend her complaint (Dkt.

8    No. 111), and Plaintiff added Deutsche Bank and OneWest to the amended complaint (Dkt.

9    No. 112). In the light of Plaintiff's amended complaint, MERS and Regional supplemented

10   their motions for summary judgment (Dkt. Nos. 120, 122).

11         Plaintiff alleges various errors in the assignments of the deeds of trust, for example, that

12   MERS could not serve as the beneficiary of the deed of trust when it was not the lender on the

13   promissory note nor received any benefits from that note. Plaintiff further alleges that because

14   MERS could not, under Washington law, serve as the beneficiary on the deed of trust, MERS's

15   assignment of the deed of trust to IndyMac (under a new identity) was also improper. And because

16   the transfer to IndyMac was allegedly improper, so too was IndyMac's appointment of Regional as

17   successor trustee improper. Plaintiff also alleges that the timing of the assignments of beneficiaries

18   and trustees was erroneous, that is, that certain assignments occurred before the assignor had

19   authority to act. But Plaintiff does not contest the delinquency of her payments under the

20   promissory note.

21         In her amended complaint, Plaintiff stated that she would seek via separate motion an

22   additional restraining order or preliminary injunction against Regional and Deutsche Bank to

23   stop any foreclosure. (Dkt. No. 112 at 7–8.) Plaintiff has not so moved, but the state court's

24   initial restraining order remains, to the Court's knowledge, in effect. Plaintiff also asserts

25   against all Defendants a cause of action for intentional infliction of emotional distress by

26   causing Plaintiff stress and anxiety as she faces the potential loss of her home. (*Id.* at 8–9.)

ORDER, C09-0149-JCC
PAGE - 3

1  Plaintiff asserts that all Defendants breached a fiduciary or quasi-fiduciary duty. (*Id.* at 9–10.)

2  Plaintiff further asserts against Deutsche Bank violations of the Truth in Lending Act for

3  IndyMac's initial alleged failure to provide a "Good Faith Estimate or a Truth in Lending

4  Disclosure document three days after Plaintiff submitted a loan application." (*Id.* at 10.)

5  Finally, Plaintiff asserts against all Defendants a cause of action for violations of Washington's

6  Consumer Protection Act. (*Id.* at 10–11.)

7  II.   DISCUSSION

8      **A. Legal Standard**

9      The Court should grant summary judgment "if the pleadings, the discovery and disclosure

10  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

11  that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary

12  judgment is appropriate against a nonmoving party who does not make a showing sufficient to

13  establish the existence of an element essential to that party's case and on which that party will bear

14  the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That is, after the

15  movant has carried its burden of demonstrating that there is no genuine issue of material fact, the

16  burden shifts to the nonmovant, who must present a quantum of evidence such "that a reasonable

17  jury could return a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

18  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it

19  cannot rely on conclusory allegations unsupported by factual data to create an issue of material

20  fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). In determining whether

21  summary judgment is appropriate, the Court must view the facts in the light most favorable to the

22  nonmoving party and draw reasonable inferences in its favor. *Scheuring v. Traylor Bros., Inc.*, 476

23  F.3d 781, 784 (9th Cir. 2007).

24      **B. OneWest**

25      In response to OneWest's motion for summary judgment, Plaintiff stated that upon

26  further review of documentation, she should not have substituted OneWest into this civil

ORDER, C09-0149-JCC
PAGE - 4

1   action. (Dkt. No. 145 at 1–2.) Plaintiff represented that she would file a motion to dismiss

2   OneWest, but to date she has not. On the basis of Plaintiff's representation, however, the Court

3   dismisses all of Plaintiff's claims against OneWest without prejudice.

4         **C.  Truth in Lending Act**

5         The Court grants Deutsche Bank's motion for summary judgment on Plaintiff's TILA

6   cause of action.

7         According to the amended complaint, Plaintiff did not receive a Good Faith Estimate or

8   other disclosure documents at the time she received her loan. (*Id.* at 4.) Claims for monetary

9   damages under TILA are subject to a one-year statute of limitations, subject to equitable

10  tolling. 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United

11  States district court, or in any other court of competent jurisdiction, within one year from the

12  date of the occurrence of the violation . . . ."). "Where a party allegedly fails to make TILA-

13  required disclosures, the date of the violation is the date that the loan documents are signed."

14  *Ulyanchuk v. Bank of Am., N.A.*, No. C10-0554 MJP, 2010 WL 2803047, at *2 (W.D. Wash.

15  July 15, 2010); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003)

16  ("The failure to make the required disclosures occurred, if at all, at the time the loan documents

17  were signed."); *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 382 (9th Cir. 1979) ("The

18  general rule applicable to federal statutes of limitations is that a limitation period begins to run

19  when the claimant discovers, or in the exercise of reasonable diligence should have discovered,

20  the acts constituting the alleged violation." (punctuation omitted)). Plaintiff's loan closed in

21  March 2007. (Dkt. No. 112 at 4.) Plaintiff did not file her action until December 2008, well

22  past the one-year deadline. (Dkt. No. 1 at 67.) At best, Plaintiff contends that the statute of

23  limitations should be tolled because there are allegations of fraudulent concealment. (Dkt. No.

24  138 at 5.) Yet Plaintiff provides no evidence of fraud, nor does Plaintiff's complaint allege

25  fraud. Accordingly, the Court declines to toll the statute of limitations and dismisses the TILA

26  claim against Deutsche Bank.

ORDER, C09-0149-JCC
PAGE - 5

**D. Intentional Infliction of Emotional Distress**

1  The Court grants Defendants' motions for summary judgment on Plaintiff's cause of

2  action for intentional infliction of emotional distress.

3  In her amended complaint, Plaintiff alleges that "[b]y their conduct described in this

4  Complaint, all of the Defendants have committed the tort of intentional infliction of emotional

5  distress by causing her stress and anxiety as she faces the potential loss of her home." (Dkt.

6  No. 112 at 9.) Plaintiff accuses MERS and Regional of improperly transferring the beneficiary

7  and trustee status with respect to the deed of trust. Plaintiff also argues that even if MERS was

8  a proper beneficiary, the appointment of Regional as trustee was improper. Because IndyMac

9  signed an Appointment of Successor Trustee to Regional *before* MERS signed the Assignment

10  of the Deed of Trust to IndyMac, Plaintiff submits that Regional was not properly appointed as

11  the trustee and therefore did not have legal authority to initiate a foreclosure. Plaintiff makes

12  no similar allegations against Deutsche Bank.

13  In Washington, the tort of intentional infliction of emotional distress[2] requires that a

14  plaintiff prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless

15  infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.

16  *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (citing cases). The first prong requires that the

17  defendant have engaged in behavior "so outrageous in character, and so extreme in degree, as to go

18  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

19  civilized community." *Id.* (internal punctuation omitted) (citing *Grimsby v. Samson*, 530 P.2d 291

20  (Wash. 1975) and Restatement (Second) of Torts § 46 cmt. d).

21  The Court concludes that none of Defendants' alleged actions rises to a level of extreme or

22  outrageous conduct. *See Strong v. Terrell*, 195 P.3d 977, 981–82 (Wash. App. 2008) ("Although

---

[2] In Washington, "outrage" and "intentional infliction of emotional distress" are synonyms for the same tort. *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).

ORDER, C09-0149-JCC
PAGE - 6

77

1  these elements are generally factual questions for the jury, a trial court faced with a summary

2  judgment motion must first determine whether reasonable minds could differ on whether the

3  conduct was sufficiently extreme to result in liability."). With respect to MERS, Plaintiff asserts

4  throughout the amended complaint that MERS never maintained a beneficiary interest and that

5  MERS is not a beneficiary as defined by the Washington Deed of Trust Act. Indeed, this Court

6  pauses at MERS's assertion that it may, in a case like this, serve as a beneficiary under

7  Washington's Deed of Trust Act. But even if Washington law does not permit MERS to serve as

8  the beneficiary, nothing in the amended complaint or Plaintiff's summary-judgment responses

9  plausibly suggests that MERS's conduct was so outrageous in character, and so extreme in degree,

10  as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

11  intolerable in a civilized community. Courts in other states have concluded that MERS acts

12  appropriately in serving as the beneficiary; it remains, at best, an open question of law in

13  Washington. The courts may disagree on whether MERS may act as a beneficiary, but reasonable

14  minds could not differ in concluding that MERS's conduct falls well short of the standard for a

15  claim of intentional infliction of emotional distress.

16       The same is true for Regional. Plaintiff alleges that there was an error in the foreclosure

17  process when a representative of IndyMac signed an appointment of successor trustee before the

18  assignment of the deed of trust was signed. But the documents became effective only when they

19  were both recorded on the same day. *See* Wash. Rev. Code § 61.24.010(2) ("Only upon recording

20  the appointment of a successor trustee in each county in which the deed of trust is recorded, the

21  successor trustee shall be vested with all powers of an original trustee."). Even if the timing of the

22  original signature was improper, neither that conduct nor Regional's conduct as it relates to

23  MERS's status as the beneficiary rises to a level of extreme or outrageous behavior.

24       Plaintiff makes even fewer allegations with respect to Deutsche Bank. At best, Plaintiff

25  asserts that improper foreclosure tactics *may* serve as the basis for intentional infliction of

26  emotional distress. To support her position, Plaintiff cites an unpublished decision of the Ninth

ORDER, C09-0149-JCC
PAGE - 7

78

1   Circuit that upheld a bankruptcy court's finding of intentional infliction of emotional distress

2   during foreclosure. *See Jared v. Keahey (In re Keahey)*, No. 09-6000, 2011 WL 288966 (9th Cir.

3   Jan. 31, 2011). Aside from the fact that this unpublished decision is not binding on this Court,

4   Plaintiff concedes that the facts of this case are not similarly egregious as those in *Keahey*. None of

5   Deutsche Bank's conduct as alleged by Plaintiff rises to a level of extreme or outrageous behavior.[3]

6   Accordingly, the Court dismisses Plaintiff's cause of action for intentional infliction of emotional

7   distress.

8       **E.  Breach of Fiduciary Duty**

9       The Court grants Deutsche Bank's and MERS's motions for summary judgment on

10   Plaintiff's claim of breach of fiduciary duty.

11       Quite simply, "[t]he general rule in Washington is that a lender is not a fiduciary of its

12   borrower; a special relationship must develop between a lender and a borrower before a

13   fiduciary duty exists." *Miller v. U.S. Bank of Wash., N.A.*, 865 P.2d 536, 543 (Wash. Ct. App.

14   1994). Although a "quasi-fiduciary relationship may exist where the lender has superior

15   knowledge and information, the borrower lacks such knowledge or business experience, the

16   borrower relies on the lender's advice, and the lender knew the borrower was relying on the

17   advice," *id.*, there is no allegation that Deutsche Bank or MERS advised Plaintiff regarding the

18   loan or that Plaintiff relied on any such advice. In fact, Plaintiff's complaint asserts

19   misrepresentations from her mortgage broker, a party with whom Plaintiff has settled her

20   claims. (Dkt. No. 31.) Accordingly, neither Deutsche Bank nor MERS owed Plaintiff a

21   fiduciary or quasi-fiduciary duty.

22       Plaintiff's claim against Regional as the trustee takes a different course. The duty owed

23   by a trustee to a borrower under Washington law is (or at least was) not obvious. Prior to June

24

25

26       [3] Nor does Plaintiff cite to any evidence indicating that any of the Defendants intentionally or recklessly inflicted the emotional distress. *See Kloepfel*, 66 P.3d at 632.

ORDER, C09-0149-JCC
PAGE - 8

1  12, 2008, the Washington Supreme Court held that

> a trustee of a deed of trust is a fiduciary for both the mortgagee and mortgagor
> and must act impartially between them. The trustee is bound by his office to
> present the sale under every possible advantage to the debtor as well as to the
> creditor. He is bound to use not only good faith but also every requisite degree
> of diligence in conducting the sale and to attend equally to the interest of the
> debtor and creditor alike.

*Cox v. Helenius*, 693 P.2d 683, 686 (Wash. 1985). However, the state legislature amended the

deed of trust act in 2008. Now, a trustee "shall have no fiduciary duty or fiduciary obligation to

. . . persons having an interest in the property" but shall have "a duty of good faith to the

borrower, beneficiary, and grantor." Wash. Rev. Code § 61.24.010. Accordingly, Regional

owed Plaintiff a duty of good faith, not a fiduciary duty.

Regional may have breached its duty of good faith by attempting to foreclose on

Plaintiff's property because Regional may not have been properly appointed as the successor

trustee empowered with the authority to foreclose. That is, if MERS could not serve as the

beneficiary of the deed of trust under Washington law, as Plaintiff so alleges, then MERS's

assignment of the deed of trust to IndyMac was erroneous. And because the transfer to IndyMac

would therefore be erroneous, so too would IndyMac's appointment of Regional as successor

trustee be erroneous. Essentially, Plaintiff's claim depends on MERS's ability to serve as the

beneficiary of the deed of trust.

This Court does need to add even more pages to the legal discourse discussing whether

MERS may serve as a beneficiary in deeds of trust generally. *Compare, e.g., Silvas v. GMAC

Mortg., LLC*, No. CV-09-265-PHX-GMS, 2009 WL 4573234 (D. Ariz. 2009) (favoring MERS);

*Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1188–89 (N.D. Cal. 2009)

(favoring MERS), *with, e.g., Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark.*, 301

S.W.3d 1 (Ark. 2009) (favoring borrower); *In re Agard*, No. 810-77338-reg (E.D.N.Y. Bankr.

Feb. 10, 2011) (favoring borrower). *See also* Christopher L. Peterson, *Foreclosure, Subprime

Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359

ORDER, C09-0149-JCC
PAGE - 9

80

1    (2010). Nor will the Court discern, more narrowly, whether MERS may serve as a beneficiary

2    under Washington's Deed of Trust Act. That answer remains patently unclear. *See* Certification

3    Order. *Vinluan v. Fidelity National Title & Escrow Co.*, No. 10-2-27688-2 SEA (King Cnty.

4    Superior Ct. Jan. 18, 2011). Because a state circuit court has recently certified this very question

5    to the Washington Supreme Court, this Court declines to decide the issue before the Washington

6    Supreme Court evaluates it.[4] *See Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1210 (9th Cir. 2010)

7    ("Because this question of Texas law is unsettled, and because the issue's resolution will have

8    pervasive implications for future claims brought against Texas insurers, we have concluded

9    that the appropriate course of action is to certify this issue to the Supreme Court of Texas. We

10   stay further proceedings in this case pending resolution of our certified question.").

11   **F.  Consumer Protection Act**

12        Finally, Plaintiff alleges that Defendants violated the Consumer Protection Act

13   ("CPA"). To state a claim under the CPA, Plaintiff must show (1) an unfair or deceptive act or

14   practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury

15   to the plaintiff in his or her business or property, and (5) which injury is causally linked to the

16   unfair or deceptive act. *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct.

17   App. 1998).

18        MERS asserts that Plaintiff has not shown an unfair or deceptive practice on its part,

19   has not shown how any act of MERS impacts the public interest, and presents nothing showing

20

21        [4] Although the Court does not yet decide whether Washington law permits MERS to
22   serve as the beneficiary, the Court nonetheless dismisses any monetary-damages claim Plaintiff
     asserts under her third cause of action. Because Plaintiff's home has not been foreclosed, her
23   claim is, in part, for the wrongful institution of a nonjudicial foreclosure proceeding. The Deed
     of Trust Act does not authorize a cause of action for damages for the wrongful institution of a
24   nonjudicial foreclosure proceeding where no trustee's sale has occurred. *See, e.g., Vawter v.
     Quality Loan Serv. Corp.*, 707 F.Supp.2d 1115, 1123 (W.D. Wash. 2010). Plaintiff may,
25   nonetheless, be entitled to injunctive relief, and the Court extends the state court's restraining
     order on the sale.
26

ORDER, C09-0149-JCC
PAGE - 10

81

Case 2:11-cv-02088-JCC   Document 150   Filed 00/15/11   Page 11 of 13

1   injuries caused by an unfair or deceptive practice by MERS. The Court disagrees. Like her

2   other claims arising under the Deed of Trust Act, Plaintiff's CPA claims depend on whether

3   MERS may be the beneficiary (or nominee of the beneficiary) under Washington state law.

4   MERS's attempt to serve as the beneficiary may have been improper under state law and it

5   may have led to widespread confusion regarding home ownership, payment delivery, and

6   negotiable positions. If MERS violated state law, its conduct may very well be classified as

7   "unfair" under the CPA. There is no doubt that MERS's conduct impacts the public interest.

8   *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537–38

9   (Wash. 1986) (listing factors for determining public interest); Peterson, *supra*, at 1362

10   ("Although MERS is a young company, 60 million mortgage loans are registered on its

11   system."); R. K. Arnold, *Yes, There Is Life on MERS*, 11 Prob. & Prop. 32, 33 (1997) ("Some

12   have called MERS the most significant event for the mortgage industry since the formation of

13   Fannie Mae and Freddie Mac. Others have compared it to the creation of uniform mortgage

14   instruments, which have become standard throughout the residential mortgage industry. This

15   suggests that the journey to MERS will have a tremendous effect on the mortgage industry.").

16   And the harm Plaintiff may have suffered because of MERS's conduct may include expending

17   resources to avert an unlawful foreclosure and preventing Plaintiff from identifying the real

18   beneficiary and negotiating a new arrangement to avoid foreclosure.

19          The same reasoning applies to Regional, who also argued that Plaintiff cannot show an

20   unfair or deceptive practice or show an impact on the public interest. Regional asserts that it

21   acted appropriately because it was candid and forthcoming about its identity and its authority

22   to conduct the foreclosure. That Regional was candid about its role is not dispositive. *See*

23   *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 289 (Wash. Ct. App. 2008) ("An unfair or

24   deceptive act or practice need not be intended to deceive, it need only have the capacity to

25   deceive a substantial portion of the public."). Moreover, just as MERS has its hands in

26   countless home loans affecting the general public, so too does Regional play a key role in

ORDER, C09-0149-JCC
PAGE - 11

82

1    numerous foreclosure actions affecting the general public. MERS and Regional ultimately may

2    bear no liability under the CPA, but this Court will await the state-court analysis before ruling

3    on the parties' motions for summary judgment.[5]

4    III.    CONCLUSION

5          Plaintiff admits that she has been delinquent in her mortgage payments. A ruling

6    favorable to Plaintiff in this case and others like it cannot and should not create a windfall for

7    all homeowners to avoid upholding their end of the mortgage bargain—paying for their homes.

8    But a homeowner's failure to make payments cannot grant lenders, trustees, and so-called

9    beneficiaries like MERS license to ignore state law and foreclose using any means necessary.

10    Whether these and similar defendants complied with Washington state law remains unclear.

11          The Court GRANTS IN PART and DENIES IN PART Defendants' motions for

12    summary judgment. The Court DISMISSES all claims against OneWest without prejudice. The

13    Court DISMISSES Plaintiff's TILA claims against Deutsche Bank with prejudice. The Court

14    DISMISSES Plaintiffs claims for intentional infliction of emotional distress against all

15    Defendants with prejudice. The Court DISMISSES Plaintiff's claims for breach of fiduciary or

16    quasi-fiduciary duty against Deutsche Bank and MERS with prejudice. The Court DISMISSES

17    Plaintiff's CPA claim against Deutsche Bank.

18          The Court DENIES Regional's motion for summary judgment on Plaintiff's claim for

19    breach of fiduciary or quasi-fiduciary duty. The Court DENIES MERS's and Regional's

20

21        [5] Deutsche Bank has satisfied the Court that federal law preempts Plaintiff's CPA

22    claims against it because it acquired the promissory note from IndyMac. Plaintiff's one-
paragraph, conclusory response to Deutsche Bank's detailed position is barely one step

23    removed from having filed no response at all on that issue. *See* Local Rules W.D. Wash. CR
7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered

24    by the court as an admission that the motion has merit."). Plaintiff's argument that Deutsche
Bank is not a bank does not address Deutsche Bank's position that it acts no differently than

25    the entity from which it purchased the promissory note. Plaintiff may be correct that federal
law does not preempt in this case, but her response is insufficient for the Court on summary

26    judgment to permit the claim to go forward against Deutsche Bank.

ORDER, C09-0149-JCC
PAGE - 12

1   motions for summary judgment on Plaintiff's CPA claim.

2      The Court STAYS this action pending the Washington Supreme Court's decision in

3   *Vinluan v. Fidelity National Title & Escrow Co.*, No. 10-2-27688-2 SEA. Counsel for the

4   parties shall notify the Court when the Washington Supreme Court decides whether to accept

5   certification and, if so, when it renders an opinion.

6      DATED this 15th day of March 2011.

7

8

9

10   John C. Coughenour
     **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ORDER, C09-0149-JCC**
**PAGE - 13**

84

**EXHIBIT D**

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTIN BAIN,<br><br>                    Plaintiff,<br><br>       v.<br><br>METROPOLITAN MORTGAGE<br>GROUP INC. et al.,<br><br>                    Defendants. | CASE NO. C09-0149-JCC<br><br>ORDER CERTIFYING QUESTION<br>TO THE WASHINGTON SUPREME<br>COURT |
| KEVIN SELKOWITZ,<br><br>                    Plaintiff,<br><br>       v.<br><br>LITTON LOAN SERVICING LP et al.,<br><br>                    Defendants. | CASE NO. 10-5523-JCC |

I.     BACKGROUND

      This Court previously ordered the parties in *Bain v. Metropolitan Mortgage Group Inc.*,

No. C09-0149-JCC (W.D. Wash. removed Feb. 3, 2009), to show cause why this Court should

ORDER CERTIFYING QUESTION TO THE
WASHINGTON SUPREME COURT
PAGE - 1

86

1  not decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. In its order, the

2  Court asked the parties to identify whether Washington law addresses Mortgage Electronic

3  Registration Systems' (MERS)—and similar organizations'—ability to serve as the beneficiary

4  and nominee of the lender under Washington's Deed of Trust Act when it does not hold the

5  promissory note secured by the deed of trust. (Dkt. No. 130.) The Court also ordered the parties

6  to identify whether Washington law addresses the legal effect in a nonjudicial foreclosure of an

7  unauthorized beneficiary's appointment of a successor trustee. (*Id.*) The parties' responses

8  demonstrated that Washington law does not specifically address these issues.

9          This Court later learned that a Washington Superior Court certified to the Washington

10  Supreme Court similar (if not identical) questions involving MERS's role in the foreclosure

11  process, namely, whether MERS was a lawful beneficiary under Washington's Deed of Trust

12  Act and, if not, the resulting legal effect of the unlawful beneficiary. This Court stayed its cases

13  involving MERS pending resolution by the Washington Supreme Court. *Bain v. Metropolitan*

14  *Mortgage Group Inc.*, No. C09-0149-JCC (W.D. Wash. removed Feb. 3, 2009) (Dkt. No. 155);

15  *Selkowitz v. Litton Loan Servicing LP*, No. C10-5523-JCC (W.D. Wash. removed July 27, 2010)

16  (Dkt. No. 39).

17          On April 25, 2011, the Commissioner of the Washington Supreme Court, Steven Goff,

18  entered a ruling denying discretionary review of the Superior Court's certified question. Under

19  Washington Rule of Appellate Procedure 2.3(a), "a party may seek discretionary review of any

20  act of the superior court not appealable as a matter of right." The Commissioner concluded that

21  because the Superior Court had not yet ruled on the merits of the MERS issue, there was no "act"

22  of the Superior Court on which to seek discretionary review.

23          Although the Superior Court's certification was not the proper vehicle for review by the

24  Washington Supreme Court, the Commissioner described both the importance of the legal

25  questions posed by the Superior Court as well as the probability that the Washington Supreme

26  Court would eventually address the issue:

PAGE - 2

1         I agree with Mr. Vinluan that whether MERS can be a deed of trust
2    beneficiary under Washington law is an important issue that deserves resolution,
3    probably by this court. It appears that there is considerable ongoing foreclosure
     litigation on the point in both state and federal courts, with no authority from this
4    court [or] the Court of Appeals to guide those decisions.

5    *Vinluan v. Fidelity Nat'l Title & Escrow Co.*, No. 85637-1, at *4 (Wash. Apr. 25, 2011) (ruling
6    denying review).[1]

7    **II.    CERTIFICATION**

8        Pursuant to Washington Revised Code section 2.60.020,

9        When in the opinion of any federal court before whom a proceeding is pending, it
10   is necessary to ascertain the local law of this state in order to dispose of such
     proceeding and the local law has not been clearly determined, such federal court
11   may certify to the supreme court for answer the question of local law involved
     and the supreme court shall render its opinion in answer thereto.
12

13   The certification process serves the important judicial interests of efficiency and comity. As

14   noted by the United States Supreme Court, certification saves "time, energy, and resources and

15   helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391

16   (1974). Because this matter involves important and far-reaching issues of first impression

17   regarding MERS's ability to serve as the beneficiary and nominee of the lender under

18   Washington's Deed of Trust Act, this matter should be presented for expedited review to the

19   Washington Supreme Court. The following questions are hereby certified to the Washington

20   Supreme Court:

21       1.  Is Mortgage Electronic Registration Systems, Inc., a lawful "beneficiary"
22           within the terms of Washington's Deed of Trust Act, Revised Code of
             Washington section 61.24.005(2), if it never held the promissory note secured
23           by the deed of trust?

24

25   _____

26      [1] The Commissioner also noted that this Court had stayed its cases pending the
     Washington Supreme Court's decision whether to accept certification from the Superior Court.

PAGE - 3

88

2. If so, what is the legal effect of Mortgage Electronic Registration Systems, Inc., acting as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

3. Does a homeowner possess a cause of action under Washington's Consumer Protection Act against Mortgage Electronic Registration Systems, Inc., if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

This Court does not intend its framing of the questions to restrict the Washington Supreme Court's consideration of any issues that it determines are relevant. If the Washington Supreme Court decides to consider the certified questions, it may in its discretion reformulate the questions. *See Affiliated FM Ins. Co. v. LTK Consulting Servs. Inc.*, 556 F.3d 920, 922 (9th Cir. 2009). Further, this Court leaves to the sound discretion of the Washington Supreme Court the choice of which of the two (or both) of the above-captioned cases it believes serves as the preferable vehicle through which to resolve the questions posed.

The Clerk of Court is directed to submit to the Washington Supreme Court certified copies of this Order; a copy of the docket in the above-captioned matters; Docket Numbers 1, 10, 21, 22, 24, 30, 31, 39, 41, 42, 44, 48, 57, 62, 65–69, 77, 79, 80, 82, 86–88, 90, 91, 94, 96, 98, 99, 102, 104, 107–109, 111, 112, 116–118, 120, 122, 123, 128, 130, 131, 132, 138–146, 148, 149, 153, 155, and 156 in Case No. 09-0149-JCC; and Docket Numbers 7–9, 12–17, 20–31, 33, and 38 in Case No. C10-5523-JCC. The record so compiled contains all matters in the pending causes deemed material for consideration of the local-law questions certified for answer.

This Court STAYS these actions until the Washington Supreme Court answers the certified questions.

DATED this 24th day of June 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

PAGE - 4

89

90

FILED

11 NOV 10 PM 2:34

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

1
2
3
4
5
6
7
8

## SUPERIOR COURT, IN AND FOR THE COUNTY OF KING, STATE OF WASHINGTON

| | |
|---|---|
| CLAUDIA M FLOREZ AND JULIO C FLOREZ, HUSBAND AND WIFE; ET AL.<br>                    **Plaintiff/Petitioner** | Cause #:   11-2-36324-4KNT |
| | |
| vs. | Declaration of Service of: |
| ONEWEST BANK, F.S.B.; ET AL.<br>                    **Defendant/Respondent** | SUMMONS; CASE INFORMATION COVER SHEET AND AREA DESIGNATION; ORDER SETTING CIVIL CASE SCHEDULE; AMENDED COMPLAINT; PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE WITH EXHIBITS A - D |
| | Hearing Date: |

9
10
11
12
13
14
15

Declaration:

16  The undersigned hereby declares: That s(he) is now and at all times herein mentioned, a citizen of the United States and a resident of the State of Washington, over the age of eighteen, not an officer of a plaintiff
17  corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

18  On the date and time of Nov  3 2011 10:06AM at the address of 1801 WESTBAY DR NW SUITE 206 OLYMPIA, within the County of THURSTON, State of WASHINGTON, the declarant duly served the
19  above described documents upon NORTHWEST TRUSTEE SERVICES, INC.  by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with
20  JEFF MINER AGENT AUTHORIZED TO ACCEPT SERVICE FOR REG. AGENT.

No information was provided that indicates that the subjects served are members of the U.S. military.

21
22  I hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

23  Dated: November 4, 2011 at Olympia, WA

24
25  by _____                          Service Fee Total: $ 78.00
            S. Treiber     PSR2009-0311-06
26
27
28



ABC Legal Services, Inc.
206 521-9000
Tracking #: 7218734

**ORIGINAL**
**PROOF OF SERVICE**

Page 1 of 1

FLOREZ
Triad Law Group
209 Dayton St, #105
Edmonds, WA   98020
425 774-0138

91

1
2
3
4
5
6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

7

| | |
|---|---|
| 8   CLAUDIA M. FLOREZ, and JULIO C. <br> FLOREZ, husband and wife and HERNANDO <br> 9   AMAYA GIL, a single man all as joint tenants, <br> Plaintiffs, <br> 10 <br> 11   vs. <br> 12   ONEWEST BANK, F.S.B., Northwest Trustee <br> Services, Inc., and Mortgage Electronic <br> 13   Registration Systems. Inc., <br> 14   Defendants. <br> 15 <br> 16 | NO. <br><br> **SUMMONS** |

17   **THE STATE OF WASHINGTON TO:  Northwest Trustee Services, Inc.**

18       A lawsuit has been started against you in the above-entitled court by the above-named

19   plaintiffs.  Plaintiffs' claims are stated in the written complaint, a copy of which is served upon

20   you with this summons.

21       To defend against this lawsuit, you must respond to the complaint by stating your defenses

22   in writing, and serve a copy upon the undersigned attorney for plaintiff(s) within twenty (20)

23   days after the service of this summons upon you, excluding the day of service, if served within

24   the State of Washington, or within sixty (60) days after service if served outside the State of

25   Washington, or a default judgment will be entered against you without notice.  A default

SUMMONS - 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA  98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

92

93



FILED

11 NOV 23 AM 11: 20

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

IN THE SUPERIOR COURT, IN AND FOR THE COUNTY OF KING, STATE OF WASHINGTON

| | |
|---|---|
| **CLAUDIA M. FLOREZ AND JULIO C. FLOREZ, HUSBAND AND WIFE; ET AL.,** | Hearing Date: |
| Plaintiff/Petitioner | CAUSE NO: **11-2-36324-4 KNT** |
| vs. | DECLARATION OF SERVICE OF: **SUMMONS & AMENDED COMPLAINT; ORDER SETTING CIVIL CASE SCHEDULE; PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| **ONEWEST BANK, F.S.B. NORTHWEST TRUSTEE SERVICES, INC., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** | |
| Defendant/Respondent | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **14th day of November, 2011, at 3:21 PM**, at the address of **3947 IRVINE Boulevard, IRVINE, Orange County, CA 92602**; this declarant served the above described documents upon **ONEWEST BANK, F.S.B., NORTHWEST TRUSTEE SERVICES, INC.**, by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Farid Mobasser, Branch Manager, Authorized To Accept Service, A bald Middle Eastern male approx. 55 years of age, 5'8" tall and weighing 180 lbs.**.

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Service Fee Total: $

Declarant hereby states under penalty of perjury under the laws of the State of Washington that the statement above is true and correct.

DATED this 15th day of **November, 2011.**

_____
**Oscar Pinto, Reg. # 1312, SAN BERNARDINO, CA**

**FOR: Triad Associates**
**REF: FLOREZ**

ORIGINAL PROOF OF
SERVICE

Tracking #: 7302193 SEA

94

95

FILED

11 NOV 28 PM 3:07

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

## SUPERIOR COURT, IN AND FOR THE COUNTY OF KING, STATE OF WASHINGTON

| | |
|---|---|
| CLAUDIA M FLOREZ AND JULIO C FLOREZ, HUSBAND AND WIFE; ET AL.<br><br>     Plaintiff/Petitioner | Cause #:   11-2-36324-4KNT |
| | Declaration of Service of: |
| vs.<br>ONEWEST BANK, F.S.B.; ET AL.<br>     Defendant/Respondent | SUMMONS; CASE INFORMATION COVER SHEET AND AREA DESIGNATION; ORDER SETTING CIVIL CASE SCHEDULE; AMENDED COMPLAINT; PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE WITH EXHIBITS A-D; LETTER; $50.00 CHECK |
| | Hearing Date: |

Declaration:

The undersigned hereby declares: That s(he) is now and at all times herein mentioned, a citizen of the United States and a resident of the State of Washington, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the date and time of Nov 14 2011  3:04PM at the address of 801 CAPITOL WY S  OLYMPIA, within the County of THURSTON, State of WASHINGTON, the declarant duly served the above described documents upon MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.  by then and there personally delivering 2 true and correct copy(ies) thereof, by then presenting to and leaving the same with TINA AMOS AGENT AUTHORIZED TO ACCEPT SERVICE FOR SEC OF STATE.

No information was provided that indicates that the subjects served are members of the U.S. military.

I hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: November 14, 2011 at Olympia, WA

by _____
     R. Toye

Service Fee Total: $ 64.50



ABC Legal Services, Inc.
206 521-9000
Tracking #: 7218756

96

**ORIGINAL
PROOF OF SERVICE**

Page 1 of 1

FLOREZ
Triad Law Group
209 Dayton St, #105
Edmonds, WA   98020
425 774-0138

97

FILED

11 NOV 29 PM 2:58

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

1
2
3
4
5
6
7       **IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
        **IN AND FOR THE COUNTY OF KING**
8

9   CLAUDIA M. FLOREZ and JULIO C.        )
    FLOREZ, husband and wife; and HERNANDO )
10  AMAYA GIL, a single man; all as joint tenants, )   No. 11-2-36324-4KNT
                                              )
11              Plaintiffs,                    )   **NOTICE OF APPEARANCE OF**
                                              )   **DEFENDANT NORTHWEST**
12          v.                                )   **TRUSTEE SERVICE, INC.**
                                              )
13  ONEWEST BANK, F.S.B.; NORTHWEST          )
    TRUSTEE SERVICES, INC.; and             )
14  MORTGAGE ELECTRONIC                      )
    REGISTRATION SYSTEMS, INC.,             )
15                                           )
                Defendants.                  )
16  _____  )

17  TO:         Charles M. Greenberg, Attorneys for Plaintiffs;

18  AND TO:     The Clerk of the Court:

19          PLEASE TAKE NOTICE that Heidi E. Buck and Lance E. Olsen of Routh Crabtree Olsen,

20  P.S., without waiving defenses of lack of subject matter or personal jurisdiction, improper venue,

21  insufficiency of service of process, or any other valid defense, hereby appear for Defendant

22  Northwest Trustee Services, Inc. in the above-entitled action.  You are further notified that service

23  of all pleadings, notices, documents or other papers herein, except original process, shall be served

24  upon said Defendant by service upon the undersigned at:

25

26

NOTICE OF APPEARANCE OF DEFENDANT          ROUTH          13555 SE 36th St., Ste 300
NORTHWEST TRUSTEE SERVICES, INC. –         CRABTREE       Bellevue, WA 98006
PAGE 1 OF 3                                 OLSEN, P.S.    Telephone: 425.458.2121
                                                           Facsimile: 425.458.2131

98

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Heidi E. Buck
Lance E. Olsen
Routh Crabtree Olsen, P.S.
13555 SE 36th St., Suite 300
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

DATED this _29_ day of November, 2011.

ROUTH CRABTREE OLSEN, P.S.

Heidi E. Buck, WSBA #41769
Lance E. Olsen, WSBA #25130
Of Attorneys for Defendant Northwest
Trustee Services, Inc.

NOTICE OF APPEARANCE OF DEFENDANT
NORTHWEST TRUSTEE SERVICES, INC. –
PAGE 2 OF 3

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

99

**Declaration of Service**

The undersigned makes the following declaration:

1.      I am now, and at all times herein mentioned was a resident of the State of Washington, over the age of eighteen years and not a party to this action, and I am competent to be a witness herein.

2.      That on November 29, 2011, I caused a copy of the **Notice of Appearance of Defendant Northwest Trustee Services, Inc.** to be served to the following in the manner noted below:

| | |
|---|---|
| Charles M. Greenberg<br>Triad Law Group<br>209 Dayton Street, Suite 105<br>Edmonds, WA 98020<br><br>Attorneys for Plaintiffs | [X]  US Mail, Postage Prepaid<br>[  ]  Hand Delivery<br>[  ]  Overnight Mail<br>[  ]  Facsimile |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed this 29th day of November, 2011.

_Kristine Stephan_
Kristine Stephan, Paralegal

NOTICE OF APPEARANCE OF DEFENDANT
NORTHWEST TRUSTEE SERVICES, INC. –
PAGE 3 OF 3

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

100

101

FILED

11 DEC 02 AM 1:39

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-36324-4 KNT

**IN THE SUPERIOR COURT OF THE STATE OF
WASHINGTON IN AND FOR THE COUNTY OF KING**

FLOREZ ET AL
        Plaintiff/Petitioner,

   vs.

ONEWEST BANK
        Defendant/Respondent.

NO.   11-2-36324-4 KNT

**ORDER ON TRANSFER OF
INDIVIDUAL JUDGE ASSIGNMENT**

(ORCJ)

Effective January 9, 2012, this case is transferred from Judge  Barbara Mack          ,
Dept.  37  , to Judge      Beth M. Andrus      , Dept.  35

Parties should not contact the newly-assigned judge prior to January 9, 2012, except for purposes of scheduling matters that will be heard after January 9, 2012.

Motions already scheduled to be heard after January 9, 2012 shall  be heard by the newly assigned judge. For motions with oral argument, you should confirm with the newly assigned court that the previously scheduled date and time is available to that court.

The trial date and all other dates in the case schedule shall remain the same, unless revised by the assigned judge.

If final documents for this case have been entered, please disregard this notice.

It is so ordered this  December 2, 2011

*Richard F. McDermott*

Presiding Judge

GREENBERG, CHARLES M.
209 DAYTON ST STE 105
EDMONDS, WA  98020-3581