HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8
9
10
11
12
13
14
15

| | |
|---|---|
| CLAUDIA M. FLOREZ, and JULIO C. FLOREZ, husband and wife and HERNANDO AMAYA GIL, a single man all as joint tenants,<br><br>Plaintiffs,<br><br>vs.<br><br>ONEWEST BANK, F.S.B., Northwest Trustee Services, Inc., and Mortgage Electronic Registration Systems. Inc.,<br><br>Defendants. | NO. 11-02088-JC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

16

## I. INTRODUCTION

17   The Defendants, through counsel, submitted a motion to dismiss the entirety of the Plaintiffs'

18 complaint for a variety of reasons-reasons which are not valid.

19   Many of the facts asserted by the defendants in their brief are accurate.  The plaintiffs do not

20 contest that they defaulted on their loans.  The plaintiffs argue that MERS is not a viable entity

21 holding legitimate beneficial interest.  Therefore, any assignment made by MERS would not be

legitimate.

22

23

## II. ANALYSIS

24 ### a. Legal Standards

25   When considering a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS- 1

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys.Inc., 135 F.3d 658, 663* (9th Cir. 1998).

Facts alleged in the complaint are assumed to be true. *See Lipton v. Patheogenesis Corp.,* 284 F.3d 1027, 1030 n.l. (9th Cir. 2002). The issue to be resolved on a motion to dismiss is whether the plaintiff is entitled to continue the lawsuit to establish the facts alleged, not whether the plaintiff is likely to succeed on the merits. *See Marksman Partners L.P. v. Chantal Pharm Corp., 927F.Sup. 1297, 1304 (C.D. Cal. 1996.)*

It is true that, a complaint must provide more than a formulaic recitation of the elements of a cause of action and must assert facts that "raise a right to relief above the speculative ---." *Bell Atlantic Corp., v. Twombly,* 550 U.S.544, 545 (2007). The Ninth Circuit has summarized *Twombly's*plausibility standard to require that a complaint's "nonconclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. lqbal,* 129 S. Ct. 1937, 1949 (2009.)

As will be discussed further herein, plaintiffs argue that they have complied with the requirements described above.

## III. DISCUSSION

### a. Plaintiff's Wrongful Foreclosure Claim

The defendants do not dispute that the original Deed of Trust signed by the plaintiffs included defendant MERS and that MERS executed the Assignment Deed of Trust to defendant OneWest.  MERS is not entitled to act as the beneficiary under the Washington State Deed of Trust Act. (MERS was designated as beneficiary in this case.)

Initially, under the holdings in *Vawter v. Quality Loan Servicing of Washington,* 707 F.Supp 3d 1115 (W.D. Wash. 2010) and *Daddabbo v. Countrywide Home Loans, Inc.,* No. C09-1417-RAJ, 2010 WL 210 2485, at 5 (W.D. Wash. May 20, 2010.)-among the cases relied on by defendants-the Western District did hold as defendant suggests. That is, that MERS can act as beneficiary under the Washington Deed of Trust Act.

Since that time however, things have changed dramatically.

First, after issuance of the rulings in cases such as *Vawter* and *Daddabbo* in 2010, MERS personnel have come forward and expressly agreed that the MERS system for breaking up the Promissory Note and Deed of Trust (and where MERS is acting as Beneficiary) has led to

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS- 2**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

"personal, financial and logistical" problems. See enclosed Request for Judicial Notice ("Request").

In particular, see Exhibits A and B to said request. As well be discussed further herein, it is notable that MERS personnel have accepted the notion of their improprieties.

In keeping with the "MERS" issues, the Honorable Judge Coughenour-Western District of Washington-has certified the question of the propriety of MERS acting as Beneficiary to the Washington State Supreme Court. See Exhibits C and D to the Request for Judicial Notice that is being submitted with this brief.

Making MERS a nominal beneficiary-as was done in the instant case-is fraught with questions and the entire "MERS" process is now considered to be highly unreliable.

First, please consider the enclosed Judicial Notice request-including the Consent Order referenced above. (Exhibits A and B to the instant Request for Judicial Notice supports the Memorandum and Consent Order re: MERS.)

As noted above, the first two attachments to the Request are a consent order and memorandum addressing serious deficiencies in the way MERS goes about its business. As the reader can see, this consent order was entered under the auspices of the office of the Comptroller of the Currency. See Exhibits A and B to the Request for Judicial Notice submitted with this brief.

Notably MERS, Inc. ("MERS") and its parent corporation MERSCORP, Inc. ("MERSCORP") expressly consented to the issuance of the following language which is contained on page two of the subject consent order:

> **"The Agencies [OCC and others] have identified certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, and legal reputational risks to MERSCORP and MERS, and to the participating Members. Members are institutions that use MERSCORP's and MERS' services and have agreed to abide by MERSCORP's Rules of Membership (the "Rules"). The Members include depository institutions regularly examined by, or subsidiaries or affiliates of depository institutions subject to examination by the OCC, the Board of Governors, the FDIC, the OTS, and other appropriate Federal banking agencies, as defined by subsection 1(b)(1) of the Bank Service Company Act, 12 U.S.C. section 1861(b)(1), and Fannie Mae and Freddie Mac, which are subject to examination by the FHFA, (collectively "Examined Members") The agencies have informed MERS and MERSCORP of**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS- 3

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

<u>the findings resulting from the examination. MERS and MERSCORP have begun implementing procedures to remediate the practices addressed in this Order</u>

MERS AND MERSCORP, by and through their duly elected and acting Boards of Directors (collectively the "Boards"), have executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13, 2011 ("Stipulation and Consent"), that is accepted by the Agencies. By this Stipulation and Consent, which is incorporated by reference, MERS and MERSCORP have consented to the issuance of the Consent Cease and Desist Order ("Order"), pursuant to 12 U.S.C. sections 1818(b), 1867(c)-(d) and 4631, by the Agencies, consistent with the Stipulation and Consent. <u>MERS and MERSCORP have committed to take all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the Agencies.</u>"
*Emphasis Added.*

"The Agencies find, and MERS and MERSCORP neither admits nor denies the following:
(1)   MERS is a wholly-owned subsidiary of MERSCORP. MERSCORP's shareholders include federally regulated financial institutions that own and/or service residential mortgages, including Examined Members, and other primary and secondary mortgage industry participants.
(2)   MERSCORP operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interest or rights. There are approximately 5,000 participating Members, of which 3,000 are residential mortgage servicers. Members register loans and report transfers, foreclosures, and other charges to the status of residential mortgage loans on MERS systems. There are currently approximately 31 million active residential mortgage loan registered on the MERS System. Examined Members receive a substantial portion of the services provided by MERSCORP and MERS.
(3)   MERS serves as mortgagee of record and nominees for the participating Members in local land records. MERS takes action as mortgagee through documents executed by "certifying officers" of MERS. MERS has designated these individuals, who are officers or employees of Members or certain third-parties who have contractual relationships with Members, as officers of MERS. By virtue of these designations, the certifying officers execute legal documents in the name of MERS, such a mortgage assignments and lien releases.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS- 4

Of particular importance are paragraphs 4 and 5 which provide as follows:

> (4)   In connection with services provided to Examined Members related to tracking and registering residential mortgage loans and initialing foreclosures ("residential mortgage and foreclosure-related services.") MERS and MERSCORP.
>
> a.   have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members and
>
> b.   have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respects to administration and delivery of services to Examined Members"
>
> (5)   By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe and unsound practices that expose them and Examined Members to unacceptable operation, compliance, legal and reputational risks."
>      *Emphasis Added.*

Finally, the court is also asked to review the actual "Stipulation and Consent to the issuance of a Consent Order" which provides in pertinent part as follows:

> "The Comptroller of the Currency of the United State of America ("Comptroller or "OCC"), and the Board of Governors of the Federal Reserve System ("Board of Governors"), the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision ("OTS") and the Federal Housing Finance Agency ("FHFA") (collectively the "Agencies") intend to impose a cease and desist order on the Mortgage Electronic Registration Systems, Inc., ("MERS"), and its parent company, MERSCORP, Inc., ("MERSCORP"), pursuant to 12 U.S.C. section 1818 (b) 12 U.S.C. 1867(c)-(d) and 12 U.S.C. section 4631, for certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks to MERSCORP and MERS, and to MERSCORP's members
>
> MERS and MERSCORP, in the interest of compliance and cooperation, enter into this Stipulation and consent to the Issuance of a Consent Order, dated April 13, 2011 ("Consent Order.")"
> *Emphasis Added.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS- 5

TRIAD LAW GROUP
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

1

2

Please note that the Consent Order was expressly signed by numerous MERS and MERSCORP personnel. Also note that these materials were issued in 2011 well after the 2010 holdings in *Daddabbo* and *Vawter* were issued[1].

3

4

5

In a non-judicial state such as Washington where the process-according to the statutes and associated case law-must be scrupulously adhered to-plaintiffs argue that using MERS as a beneficiary makes the process inherently undependable and unreliable.

6

This is something that the Washington statutory framework does not allow.

7

8

In *Bain v Onewest Bank, F.S.B.*, et. al, Case No. C09-0149-JCC, the various actions taken by the MERS personnel caused the court a great deal of concern. (See Exhibit C to the Request for Judicial Notice attached with this submittal.)

9

10

11

12

Therefore, Plaintiffs argue that MERS actions are inappropriate and MERS itself has agreed. MERS has acted inappropriately and any claims made against Plaintiff should be dismissed or continued until the documents and parties can be established to be reliable or until these issues are resolved.

13

14

It is clear that-at present-the "MERS system" is highly unreliable and the problems are so pervasive that MERS itself signed off on the Consent Order, (Exhibit B to the Request for Judicial Notice.)

15

16

17

Recall that in *Cox v. Helenius*, 103 Wn.2d 383 693 P.2d 683 (1985),the court ruled that the "foreclosure act" contains safeguards to ensure that the foreclosure process is fair. This, of course, is the antithesis of the MERS system.

18

19

20

Additionally the court is asked to take judicial notice of the order that was recently entered in another matter as well. This other matter was *Bain v. Onewest Bank*, Request for Judicial Notice, Exhibit C.

21

22

23

24

This is what Judge Coughenhour said about whether MERS may serve as beneficiary in this state: "That answer remains patently unclear." Also, see Exhibit C to the Request for Judicial notice. See Certification Order, *Vinluan v. Fidelity National Title & Escrow Co.* No. 10-2-27688-2 SEA (King Cnty. Superior Ct. Jan. 18, 2011.) See Exhibit D to the Request for Judicial Notice.

25

---

[1] Plaintiff is preparing discovery requests to be propounded to various parties so that the effect of the improprieties described above can be better understood under the specific facts of the instant case.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS- 6**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

1   Given the improprieties perpetrated by MERS and the consequent voluntary sign-off and
2   entry of the Consent Order and given the admonition by Judge Coughenour that whether
3   MERS may serve as a beneficiary in this state is currently "patently unclear" it would be
4   extremely inappropriate to dismiss the instant case until the situation with MERS is resolved or
    clarified.
5       Across the country, courts are finding that the actions of MERS are inappropriate.
6   Consider the case of *Hooker v Northwest Trustee Services, Inc.*, attached as Exhibit E.  In that
7   case, Judge Panner denied a defendant's motion to dismiss in a case involving an Assignment
8   Deed of Trust executed by MERS, holding as follows:

**MERS, and its registered bank users, created much of the confusion involved
9   in the foreclosure process.  By listing a nominal beneficiary that is clearly
    described in the deed of trust as anything but the actual beneficiary, the
10  MERS system creates confusion as to who has the authority to do what with
    the trust deed.  The MERS system raises serious concerns regarding the
11  appropriateness and validity of foreclosure by advertisement and sale outside
    of any judicial proceeding.**
12  *Hooker v Northwest Trustee Services*, Order, Civ. No. 10-3111-PA, US District Court,
13  Oregon District, 2011.

14      It is true that without discovery, the plaintiff cannot verify whether Brian Burnett, the
15  party who executed the Assignment Deed of Trust was an employee of MERS at the time he
16  executed the document as an "Assistant Secretary" with MERS.  However, the plaintiff has
17  located other documents recorded in King County indicating that Brian Burnett is clearly an
18  employee at OneWest.  The court is asked to take judicial notice of Exhibit F, an Appointment of
19  Successor Trustee document for another property unrelated to this case.  On this document, King
20  County Records Number 20100819000940, Brian Burnett signs as "Assistant Vice President" of
    OneWest.
21      If Brian Burnett is in fact simply a OneWest employee, the plaintiff's mortgage would
22  have been effectively assigned by OneWest to OneWest, an apparent act of subterfuge.
23      Although not binding in this jurisdiction, the court may consider other cases in which
24  similar fact patterns have arisen.
25      New York Courts have considered this very issue.  For example, in Bank of New York v
    Mulligan, the court considered a case in which a party executed an Assignment to the bank as an
    officer of MERS, and later the same party executed another assignment as an officer of the bank.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS- 7**

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

1   The court stated: "The Court is concerned that Mr. Harless might be engaged in a subterfuge,

2   wearing various corporate hats. Before granting an application for an order of reference, the

3   Court requires an affidavit from Mr. Harless describing his employment history for the past three
    years..." *Bank of NY v. Mulligan*, 2008 NY Slip Op 31501 (U)(June 3, 2008).

4       Additional New York decisions have made this same point: "If he is a

5   Vice President of both the assignor and the assignee, this would create a conflict of interest and

6   render the July 21, 2006 assignment void." *Deutsche Bank National Trust Co. v. Castellanos*,

7   2008 N.Y. Slip. Op. 50033 (2008); ("The Court is concerned that there may be fraud on the part
    of HSBC, or at least malfeasance. Before granting an application for an order of reference, the

8   Court requires an affidavit from [the person who signed the assignment] describing his

9   employment history for the past three years."); *HSBC Bank, N.A. v. Cherry*, 2007 N.Y. Slip. Op.

10  # 52378 (2007).

11      The presence of MERS has tainted the chain of title on the plaintiff's property.

12  Beneficial rights to the plaintiff's mortgage were assigned by OneWest by a OneWest employee.

13  This fact alone warrants that a wrongful foreclosure claim survive the motion to dismiss.

14                    b. Plaintiff's Emotional Distress Claim

15      Regarding this cause of action plaintiff has met each of the required elements. Defendants'

16  conduct was clearly outrageous. By assigning a piece of property to itself, the plaintiffs were left

17  in a position of not knowing the identity of the rightful beneficiary of their home. They believed

18  that their home was being taken from them by a party with no legitimate claim to it, and because

19  this party in fact did not have a legitimate ownership interest due to an illegal assignment, the
    plaintiff's fears were wholly accurate.

20      Under the operations of MERS, any party could simply record as assignment to themselves

21  by claiming to be a MERS officer as Brian Burnett did.

22                        c. Plaintiff's CPA Claim

23      There are five elements of a private CPA claim: "(1) an unfair or deceptive act or

24  practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which

25  causes injury to the plaintiff in his or her business or property; and (5) which injury is causally
    linked to the unfair or deceptive act." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons
    Corp.*, 858 P.2d 1054, 1061 (Wash. 1993) (citation omitted).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS**- 8

Defendant argues that the plaintiffs' CPA claim fails to state a claim upon which relief can be granted because the plaintiffs failed to allege facts regarding any unfair or deceptive act or an injury.

The plaintiffs have definitely asserted a Consumer Protection Act claim. See previous sections of the brief. They have described a number of deceptive actions on the part of OneWest, MERS and NW Trustee Services, -where the Bank has essentially assigned beneficial interest to itself.

Obviously, the plaintiffs would argue that they spent thousands of dollars under the belief that they were on the path to home ownership.  This has now all been taken away from them.

Therefore, these were most certainly deceptive actions taken by the Bank. These actions clearly occurred in commerce-they affected the public interest-and likely have been repeated. The injury is clear-if the court accepts Plaintiffs' versions of the facts and the fact that there is a causal link is clear.

Consider the involvement of MERS. Here's what the court said in *Bain v. OneWest Bank*, F.S.B. et al Case No. C09-049-JCC, Exhibit C:

**MERS asserts that Plaintiff has not shown an unfair or deceptive practice on its part, has not shown how any act of MERS impacts the public interest and presents nothing showing injuries caused by an unfair or deceptive practice by MERS. The Court disagrees. Like her other claims arising under the Deed of Trust Act, Plaintiff's CPA claims depend on whether MERS may be the beneficiary under Washington state law. MERS's attempt to serve as the beneficiary may have been improper under state law and it may have led to widespread confusion regarding home ownership, payment delivery, and negotiable positions. If MERS violated state law, its conduct may very well be classified as unfair under the CPA. There is no doubt that MERS's conduct impacts the public interest. Citations omitted.**

Under the circumstances, the CPA claim is completely legitimate as it relates to MERS and the actions of OneWest and the injury caused to the plaintiff.

### d. Plaintiffs' Fraud Claim

In Washington, a claim for fraud has the following elements: (1) representation of an existing fact, (2) materiality, (3) falsity, (4) the speaker's knowledge of its falsity, (5) intent of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely upon it, and (9) damages suffered by plaintiff. *Stiley v. Block*, 130 Wn. 2d 486, 505 (1996).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS- 9

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867

The plaintiff has met all of these elements with its fraud claim: (1) OneWest represents they are a valid beneficiary with an illegal assignment; (2) the beneficial interest is of material importance; (3) because the assignment was executed by a OneWest employee to OneWest, the assignment is false; (4) OneWest was aware of the illegal assignment; (5) OneWest intended to act upon the invalid assignment and foreclose on the plaintiffs; (6) the plaintiff was unaware of who had legal beneficial interest, if anyone; (7)the plaintiffs had no choice but to face OneWest's foreclosure; (8) the plaintiffs had the right to rely on any party who purported to be beneficiary; and (9) every dollar the plaintiffs spent towards owning their home was lost and is part of their damages.

<u>e. Criminal Claims</u>

Plaintiff will voluntarily dismiss this claim

## IV. CONCLUSIONS

Based on Plaintiffs response, defendant's motion should be denied. If the court is inclined to rule against the plaintiff, the plaintiff requests that the court dismiss any claims without prejudice, as well as grant leave so as to allow the plaintiffs to amend their claims.

DATED this 6th day of February, 2012.

**TRIAD LAW GROUP**

_/S/  Charles M. Greenberg_
Charles M. Greenberg, WSBA 17661
Attorney for Plaintiff
Triad Law Group
209 Dayton Street, Suite 105
Edmonds, WA 98020
Tel: 425-774-0138
Fax: 425-672-7867
Email: cmg@triadlawgroup.com

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**- 10

**TRIAD LAW GROUP**
209 Dayton Street, Suite 105
Edmonds, WA98020
Telephone: (425) 774-0138
Fax: (425) 672-7867