# EXHIBIT A

#2011-044

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**COMPTROLLER OF THE CURRENCY**
**WASHINGTON, D.C.**

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM**
**WASHINGTON, D.C.**

**FEDERAL DEPOSIT INSURANCE CORPORATION**
**WASINGTON, D.C.**

**OFFICE OF THRIFT SUPERVISION**
**WASHINGTON, D.C.**

**FEDERAL HOUSING FINANCE AGENCY**
**WASHINGTON, D.C.**

| In the Matter of: | |
|---|---|
| MERSCORP, Inc., and the Mortgage Electronic Registration Systems, Inc., Reston, Virginia | OCC No. AA-EC-11-20 |
| | Board of Governors Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2 |
| | FDIC-11-194b |
| | OTS No. 11-040 |
| | FHFA No. EAP-11-01 |

**CONSENT ORDER**

The Comptroller of the Currency of the United States of America ("Comptroller"), through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System, Washington, D.C. ("Board of Governors"), the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision ("OTS"), and the Federal Housing Finance Agency ("FHFA") (collectively



the "Agencies"), as part of an interagency horizontal review of major residential mortgage servicers and mortgage service providers, have conducted an examination of MERSCORP, Inc. ("MERSCORP"), and of its wholly-owned subsidiary corporation, Mortgage Electronic Registration Systems, Inc., ("MERS"), both of which provide various services to financial institutions related to tracking and registering residential mortgage ownership and servicing, acting as mortgagee of record in the capacity of nominee for lenders, and initiating foreclosure actions. The Agencies have identified certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks to MERSCORP and MERS, and to the participating Members. Members are institutions that use MERSCORP's and MERS' services and have agreed to abide by MERSCORP's Rules of Membership (the "Rules"). The Members include depository institutions regularly examined by, or subsidiaries or affiliates of depository institutions subject to examination by the OCC, the Board of Governors, the FDIC, the OTS, and other appropriate Federal banking agencies, as defined by subsection 1(b)(1) of the Bank Service Company Act, 12 U.S.C. § 1861(b)(1), and Fannie Mae and Freddie Mac, which are subject to examination by the FHFA, (collectively "Examined Members"). The Agencies have informed MERS and MERSCORP of the findings resulting from the examination. MERS and MERSCORP have begun implementing procedures to remediate the practices addressed in this Order.

MERS and MERSCORP, by and through their duly elected and acting Boards of Directors (collectively the "Boards"), have executed a "Stipulation and Consent to the Issuance of a Consent Order," dated April 13, 2011 ("Stipulation and Consent"), that is accepted by the Agencies. By this Stipulation and Consent, which is incorporated by reference, MERS and MERSCORP have consented to the issuance of this Consent Cease and Desist Order ("Order"),

pursuant to 12 U.S.C. §§ 1818(b), 1867(c)-(d), and 4631, by the Agencies, consistent with the Stipulation and Consent. MERS and MERSCORP have committed to take all necessary and appropriate steps to remedy the deficiencies and unsafe or unsound practices identified by the Agencies.

ARTICLE I

JURISDICTION

For purposes of this Consent Order:

(1) MERS and MERSCORP are providers of services to Examined Members within the meaning of 12 U.S.C. § 1867(c).

(2) MERS and MERSCORP are each an "institution-affiliated party" within the meaning of 12 U.S.C. § 1813(u) by virtue of MERS acting as agent for lenders (who include Examined Members) with respect to serving as mortgagee in a nominee capacity for the lender, and are each an "entity-affiliated party" within the meaning of 12 U.S.C. § 4502(11) by virtue of MERS acting as agent for Fannie Mae and Freddie Mac with respect to serving as mortgagee in a nominee capacity for the owner of residential mortgage loans.

(3) The OCC, the Board of Governors, the OTS, and the FDIC examined the services provided by MERS and MERSCORP to Examined Members pursuant to the provisions of 12 U.S.C. § 1867(c), on behalf of themselves and other appropriate Federal banking agencies as defined in 12 U.S.C. § 1861(b)(1).

(4) The Agencies have authority to enter into this Consent Order pursuant to 12 U.S.C. §§ 1818(b), 1867(c)-(d), and 4631.



ARTICLE II

AGENCIES' FINDINGS

The Agencies find, and MERS and MERSCORP neither admit nor deny, the following:

(1) MERS is a wholly-owned subsidiary of MERSCORP. MERSCORP's shareholders include federally regulated financial institutions that own and/or service residential mortgages, including Examined Members, and other primary and secondary mortgage industry participants.

(2) MERSCORP operates a national electronic registry that tracks beneficial ownership interests and servicing rights associated with residential mortgage loans and any changes in those interests or rights. There are approximately 5,000 participating Members, of which 3,000 are residential mortgage servicers. Members register loans and report transfers, foreclosures, and other changes to the status of residential mortgage loans on the MERS System. There are currently approximately 31 million active residential mortgage loans registered on the MERS System. Examined Members receive a substantial portion of the services provided by MERSCORP and MERS.

(3) MERS serves as mortgagee of record and nominee for the participating Members in local land records. MERS takes action as mortgagee through documents executed by "certifying officers" of MERS. MERS has designated these individuals, who are officers or employees of Members or certain third-parties who have contractual relationships with Members, as officers of MERS. By virtue of these designations, the certifying officers execute legal documents in the name of MERS, such as mortgage assignments and lien releases.

(4) In connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related services"), MERS and MERSCORP:

(a) have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

(b) have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

(5) By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe ~~or~~ and unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks.

Pursuant to the authority vested in them by the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1818(b), the Bank Service Company Act, 12 U.S.C. § 1867(c)-(d), and the Federal Housing Enterprises Financial Safety and Soundness Act, 12 U.S.C. § 4631, the Agencies hereby ORDER that:

## ARTICLE III

## COMPLIANCE COMMITTEE

(1) Within twenty (20) days of this Order, the Boards of Directors of MERSCORP and MERS (the "Boards") shall each establish and thereafter maintain a Compliance Committee of at least three (3) directors, of which at least two (2) may not be employees or officers of MERS or MERSCORP or any of their subsidiaries or affiliates. In the event of a change of the



membership, the name of any new committee member shall be submitted to the OCC Deputy Comptroller for Large Bank Supervision ("Deputy Comptroller"). The Compliance Committee shall be responsible for monitoring and coordinating MERS' and MERSCORP's compliance with the terms and provisions of this Order. The Compliance Committee shall meet at least monthly and maintain minutes of its meetings.

(2) Within ninety (90) days of this Order, and within thirty (30) days of the end of each calendar quarter thereafter, the Compliance Committee shall submit a written progress report to the Boards setting forth in detail its actions taken to comply with each Article of this Consent Order, and the results and status of those actions.

(3) The Boards shall forward a copy of the Compliance Committee's report, with any additional comments by the Boards, to the Deputy Comptroller and the OCC Examiner-in-Charge within ten (10) days of receiving such report.

## ARTICLE IV

## ACTION PLAN

(1) Within ninety (90) days of this Order, MERS and MERSCORP shall jointly develop and submit to the Deputy Comptroller an acceptable plan containing a complete description of the actions that are necessary and appropriate to achieve compliance with the terms and provisions of this Order ("Action Plan"), as well as the resources to be devoted to the planned actions, with respect to services provided to Examined Members. In the event the Deputy Comptroller requests MERS or MERSCORP to revise the Action Plan, they shall immediately make the requested revisions and resubmit the Action Plan to the Deputy Comptroller. Following acceptance of the Action Plan by the Deputy Comptroller, MERS and

MERSCORP shall not take any action that would constitute a significant deviation from, or material change to the requirements of the Action Plan, or this Order, unless and until MERS or MERSCORP have received a prior written determination of no supervisory objection from the Deputy Comptroller.

(2) The Boards shall ensure that MERS and MERSCORP achieve and thereafter maintain compliance with this Order, including, without limitation, successful implementation of the Action Plan. The Boards shall further ensure that, upon implementation of the Action Plan, MERS and MERSCORP achieve and maintain effective residential mortgage and foreclosure-related services on behalf of Examined Members, as well as associated risk management, compliance, quality control, audit, training, staffing, and related functions. In order to comply with these requirements, the Boards shall:

(a) require the timely reporting by MERS and MERSCORP management of such actions taken to comply with this Order and/or directed by either Board to be taken pursuant to this Order;

(b) follow-up on any compliance issues with such actions in a timely and appropriate manner; and

(c) require corrective action be taken in a timely manner for any non-compliance with such actions.

(3) The Action Plan shall address, at a minimum:

(a) the capability of the Boards and senior management to ensure that MERS and MERSCORP are operated in a safe and sound manner in accordance with applicable laws, regulations and requirements of this Order;



(b) development and implementation of a strategic plan to include a comprehensive review of business operations, including the risks associated with each business line, and recommendations to implement the strategic plan;

(c) consistent with the strategic plan, development and implementation of a financial plan to ensure that MERSCORP and MERS have adequate financial strength to support business operations related to Examined Members. The financial plan, at a minimum, shall address:

(i) any need for additional capital, including the amount and source of capital;

(ii) the identification, measurement, monitoring and control of funding and liquidity risk; and

(iii) a profit and budget plan to include specific goals to reduce discretionary expenses and improve and sustain earnings, as well as maintain adequate reserves for contingency risks and liabilities;

(d) development and implementation of a comprehensive litigation strategy to effectively manage lawsuits and legal challenges involving MERS and MERSCORP, regardless of whether MERSCORP or MERS is a named party, including early identification and tracking of such lawsuits and challenges;

(e) development and implementation of a communication plan to communicate effectively and in a timely manner with MERSCORP's shareholders, Members including Examined Members, and relevant external parties;

(f) development and implementation of a compliance and quality assurance program for ensuring that Examined Members implement and follow all of the Rules, including

adherence to the requirements set forth in MERS Announcement 2011-01, dated February 16, 2011;

(g) development and implementation of a plan to ensure that MERS certifying officers are transitioned expeditiously onto the Corporate Resolution Management System ("CRMS") in accordance with MERS' current certifying officer policy and process;

(h) development and implementation of appropriate standards to maintain separation of corporate functions between MERS and MERSCORP;

(i) review of the effectiveness of the Rules, and related Procedures, Terms and Conditions to determine what, if any, additions, amendments, or deletions are appropriate;

(j) development and implementation of enhanced information reporting practices to senior management from lower levels of each organization, and from senior management to the Boards to ensure that significant issues are properly identified and escalated, and that corporate actions are considered, taken in a timely fashion, ands properly documented;

(k) any Matter Requiring Attention in the OCC Supervisory Letter No. MERS 2011-01, dated January 19, 2011, that addresses an issue that is not otherwise covered by provisions of this Order; and

(l) development of contingency plans to address issues that arise with respect to any of the foregoing elements of the Action Plan, including plans that address operational continuity issues in the normal course of business and in a stressed environment.

(4) The Action Plan shall specify timelines for completion of each of the requirements of this Order. The timelines in the Action Plan shall be consistent with any deadlines set forth in this Order.



ARTICLE V

BOARD AND MANAGEMENT SUPERVISION

(1) Within thirty (30) days from the effective date of this Order, MERSCORP and MERS shall engage an independent third party, acceptable to the Deputy Comptroller, with the appropriate expertise and qualifications to analyze and assess the directors, officers, management and staffing needs with respect to any and all services provided by MERSCORP and MERS to Examined Members, in order to operate MERS and MERSCORP in a safe and sound manner and achieve compliance with this Order. The engagement shall provide that the required analysis and assessment be completed and summarized in a written report to the Boards ("Management Report") within sixty (60) days of the third party's engagement, with a copy simultaneously delivered to the Deputy Comptroller. At a minimum, the Management Report shall:

(a) identify the type and number of positions needed appropriately to manage and supervise all services provided to Examined Members, including, but not limited to: (i) the orderly and expeditious transitioning of Examined Members onto the CRMS; (ii) the enhanced communication and coordination with Examined Members required by the Communications Plan; and (iii) registration or tracking systems, assignment and/or foreclosure services, detailing any vacancies and additional staffing needs with appropriate consideration to the scope and complexity of the services provided, for the number of Examined Members and MERS certifying officers who will need to complete the certification process, and for the size of the portfolios for which these services are provided;

(b) identify the type and number of officer and staff positions needed to ensure compliance with all applicable federal and state laws and regulations and material

contractual requirements, as well as to implement any newly established or revised plans, policies, procedures, processes and systems required by this Order, detailing any vacancies, additional needs and/or unit re-alignments required with appropriate consideration to the scope and complexity of the services provided as well as the size of the portfolios for which these services are provided;

(c) identify and address the appropriateness of the duties, responsibilities, authority and accountability of each professional position, giving due consideration to the relevant knowledge, skills, abilities, and experience of the incumbent (if any);

(d) present a clear and concise description of the relevant knowledge, skills, abilities, and experience necessary for each officer position, including delegations of authority and performance objectives, including whether the incumbent (if any) has the requisite knowledge, skills, abilities, and experience for such position;

(e) recommend a plan to recruit and retain directors, officers, management and staff consistent with the independent third party's analysis and assessment;

(f) recommend any reorganization or realignment of directors, officers, management and staff consistent with the independent third party's analysis and assessment;

(g) recommend any additional training and development needs as well as a plan to provide such training and development to appropriate directors, officers, management and staff; and

(h) recommend procedures to periodically review and update the Management Plan required by subparagraph (3) below and assess the performance of all directors, officers, management and staff.



(2) MERSCORP and MERS shall provide a copy of the proposed engagement letter or contract with the third party to the Deputy Comptroller for review and non-objection prior to entering into the engagement.

(3) Within thirty (30) days of receipt of the Management Report, MERSCORP and MERS shall jointly develop a written plan of action (the "Management Plan") in response to each recommendation contained in the Management Report and a time frame for completing each action. The Management Plan and any subsequent modification(s) thereto shall be submitted to the Deputy Comptroller for review and non-objection.

(4) The Boards shall immediately establish a schedule of regular Board meetings to be held at least once every calendar quarter.

## ARTICLE VI

## COMMUNICATIONS RELATING TO LEGAL PROCEEDINGS

(1) Within sixty (60) days of this Order, MERS and MERSCORP shall jointly develop and submit to the Deputy Comptroller a plan for communicating with Members concerning significant legal proceedings or issues. The plan shall include:

(a) a process for notifying and informing Examined Members concerning significant legal proceedings and legal issues that relate to the functioning of MERS, MERSCORP, or the Examined Members' interests with respect to MERS or MERSCORP, including, but not limited to significant favorable or adverse decisions, within a short time period after the issue arises or a decision is issued;

(b) a process that provides sufficient incentives for Members to inform MERSCORP and MERS of the filing of all lawsuits brought in MERS' name or to which MERS is a named party, and periodically update MERS concerning the status of such lawsuit;

(c) a process to track all legal proceedings brought in MERS' name, in which MERS is a named party, or which involve legal issues that affect the interests of MERS, MERSCORP, or Examined Members with respect to MERSCORP and MERS;

(d) a process to ensure an appropriate response by MERS to legal proceedings brought in MERS' name, in which MERS is a named party, or which involve legal issues that affect the interests of MERS, MERSCORP, or Examined Members with respect to MERSCORP and MERS;

(e) proposed revisions as necessary to the MERSCORP Rules to implement these processes.

(2) Within thirty (30) days of this Order, MERSCORP and MERS shall establish Legal Risk Subcommittees of the Boards, which shall make regular reports to the Boards on outstanding legal issues and pending litigation that affect the interests of MERS, MERSCORP, and Examined Members with respect to MERSCORP and MERS, and provides analysis and recommendations concerning litigation contingency reserves.

ARTICLE VII

CERTIFYING OFFICERS

(1) Within sixty (60) days of this Order, MERS shall prepare and submit a plan to the Deputy Comptroller to strengthen its governance processes applicable to MERS certifying officers with respect to Examined Members. The plan shall include, but not be limited to:



(a) policies and processes to designate or certify individuals as authorized MERS certifying officers, and that only such individuals act in such capacity;

(b) policies, processes and resources to track the identity and activities of MERS certifying officers and to ensure their compliance with the Rules and related requirements, including the requirements of the CRMS;

(c) policies, processes and resources to register third-party MERS certifying officers who are acting for Examined Members;

(d) policies, processes and resources to ensure the adequacy and appropriateness of training for certifying officers;

(e) policies, processes, and resources to ensure that Examined Members comply with MERS Membership Rule 8 and MERS Announcement 2011-01; and

(f) policies, processes, and resources to ensure that Examined Members and third parties can quickly and accurately determine if specific individuals are designated to act as authorized MERS certifying officers.

ARTICLE VIII

QUALITY ASSURANCE AND DATA INTEGRITY

(1) Within sixty (60) days of this Order, MERS and MERSCORP shall jointly prepare and submit a plan to the Deputy Comptroller to strengthen its policies, processes, resources and controls for data standards and quality assurance of information submitted to and contained in MERSCORP data systems. The plan shall include, but not be limited to:

(a) an assessment and determination of which data elements are necessary to MERS and MERSCORP operations and should be mandatory reporting requirements

("mandatory reporting fields") for Examined Members. The plan shall include elimination of collection of existing data elements currently reported by Members that are not reasonably related to MERS or MERSCORP operations;

(b) policies, processes and resources to ensure the accuracy and reliability of data reported to MERSCORP, including but not limited to system-to-system reconciliations of all MERS mandatory reporting fields, frequent capture of all reject/warning reports associated with registrations, transfers, and status updates on open-item aging reports, and an accurate determination of foreclosures pending in MERS' name;

(c) adoption or revision of an adequate written quality assurance procedures manual and processes to ensure appropriate implementation of the quality assurance program described in the quality assurance procedures manual;

(d) policies, processes and resources to ensure that Examined Members comply with MERSCORP approved quality assurance plans submitted to MERSCORP by Examined Members and provide to MERSCORP an annual independent report demonstrating their adherence to their MERSCORP approved quality assurance program, including submission of all mandatory MERS data reporting fields, and processes for system-to-system reconciliation and reject/warning error correction.

ARTICLE IX

eREGISTRY

(1) Within ninety (90) days from the effective date of this Order, the MERSCORP Board shall obtain an independent, external review of and recommendations regarding the eRegistry system of recording electronic notes. The review and recommendations shall consider



whether appropriate policies, procedures, and operating controls are in place to ensure effective operation of eRegistry. Within sixty (60) days of completion of the review and recommendations required by this Article, MERSCORP shall submit to the Deputy Comptroller for review and supervisory non-objection a plan describing actions necessary to implement any changes to applicable policies, procedures and controls as a result of the findings of the audit. In the event the Deputy Comptroller asks MERSCORP to revise the plan required by this Article, MERSCORP shall immediately make the requested revisions and resubmit the plan.

ARTICLE X

COMMUNICATIONS PLAN

(1) Within sixty (60) days from the effective date of this Order, MERSCORP shall develop, adopt and implement a plan designed to enhance communications and coordination with its Examined Members with respect to their duties and responsibilities as set forth in the Rules and related Procedures, Terms and Conditions ("Communications Plan"). The Communication Plan shall, at a minimum, be designed to ensure that all Examined Members and appropriate personnel within an Examined Member are aware of, and can comply with current Rules and related Procedures, Terms and Conditions and any new or revised Rules or related Procedures, Terms and Conditions on an ongoing basis and to ensure that Examined Members and appropriate personnel within or retained by an Examined Member are aware of, and are able to comply with, the requirement to advise MERSCORP of the initiation of litigation naming or otherwise involving MERS, MERSCORP and/or one of their subsidiaries and coordinate the defense or prosecution of such litigation with MERSCORP.

## ARTICLE XI

### APPROVAL, IMPLEMENTATION AND REPORTS

(1) MERS and MERSCORP shall submit the written assessments, reports and plans required by this Order for review and written determination of no supervisory objection to the Deputy Comptroller and within the applicable time periods set forth in the Order. MERS and MERSCORP shall adopt the plans required by this Order upon receipt of a determination of no supervisory objection from the OCC, and shall immediately make any revisions requested by the Deputy Comptroller. Upon adoption, MERS and MERSCORP shall immediately implement the plans required by this Order and thereafter fully comply with them.

(2) During the term of this Order, the required plans, programs, policies and procedures shall not be amended or rescinded in any material respect without the prior written approval of the Deputy Comptroller.

(3) During the term of this Order, MERS and MERSCORP shall revise the required plans, programs, policies and procedures as necessary to incorporate new or changes to applicable federal and state laws, rules, regulations, guidelines, court orders, and contractual or other requirements.

(4) The Boards shall ensure that MERS and MERCORP have processes, personnel, resources, and control systems to ensure implementation of and adherence to the plans, programs, policies and procedures required by this Order.

(5) Within thirty (30) days after the end of each calendar quarter following the date of this Order, MERS and MERSCORP shall submit to the Deputy Comptroller a written progress report detailing the form and manner of all actions taken to secure compliance with the provisions of this Order and the results thereof. The progress report shall include information



sufficient to validate compliance with this Order, based on a testing program acceptable to the OCC that includes, if required by the OCC, validation by third-party independent consultants acceptable to the Deputy Comptroller. The Deputy Comptroller may, in writing, discontinue the requirement for progress reports or modify the reporting schedule.

(6) All communication regarding this Order shall be sent to:

(a) Joseph H. Evers
Deputy Comptroller for Large Bank Supervision
Office of the Comptroller of the Currency
250 E Street, SW
Washington, DC 20219

With copy to:

(b) Stephen Jackson
National Bank Examiner
Office of the Comptroller of the Currency
250 E Street, SW
Washington, DC 20219

## ARTICLE XII

### COMPLIANCE AND EXTENSIONS OF TIME

(1) If MERS or MERSCORP contend that compliance with any provision of this Order would not be feasible or legally permissible, or requires an extension of any timeframe within this Order, the Boards shall submit a written request to the Deputy Comptroller asking for relief. Any written requests submitted pursuant to this Article shall include a statement setting forth in detail the special circumstances that prevent either MERS or MERSCORP from complying with a provision, that require the Deputy Comptroller to exempt either of them from a provision, or that require an extension of a timeframe within this Order.

(2) All such requests shall be accompanied by relevant supporting documentation, and to the extent requested by the Deputy Comptroller, a sworn affidavit or affidavits setting forth any other facts upon which MERS or MERSCORP relies. The Deputy Comptroller's decision concerning a request is final and not subject to further review.

ARTICLE XIII

OTHER PROVISIONS

(1) Although this Order requires MERS and MERSCORP to submit certain actions, reports and plans for the review or a written determination of no supervisory objection by the Deputy Comptroller, the Boards have the ultimate responsibility for proper and sound management of MERS and MERSCORP.

(2) In each instance in this Order in which MERS or MERSCORP are required to ensure adherence to, and undertake to perform certain obligations, it is intended to mean that the Boards shall:

(a) authorize and adopt such actions on behalf of MERS and MERSCORP as may be necessary for them to perform their obligations and undertakings under the terms of this Order;

(b) require the timely reporting of MERS and MERSCORP management of such actions directed by either Board to be taken under the terms of this Order;

(c) follow-up on any material non-compliance with such actions in a timely and appropriate manner; and

(d) require corrective action be taken in a timely manner of any material non-compliance with such actions.



(3) If, at any time, the Comptroller, the Board of Governors, the FDIC, the OTS, or the FHFA deems it appropriate in fulfilling the responsibilities placed upon them by the several laws of the United States to undertake any action affecting MERS or MERSCORP, nothing in this Order shall in any way inhibit, estop, bar or otherwise prevent either any of them from so doing.

(4) This Order is and shall become effective upon its execution by the Agencies through their authorized representatives whose hands appear below. The Order shall remain effective and enforceable, except to the extent that, and until such time as, any provision of this Order shall be amended, suspended, waived, or terminated in writing by the Comptroller.

(5) Any time limitations imposed by this Order shall begin to run from the effective date of this Order, as shown below, unless the Order specifies otherwise

(6) This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. §§ 1818(b), 1867(d), and 4631 and expressly does not form, and may not be construed to form, a contract binding the Comptroller, the Board of Governors, the FDIC, the OTS, or the FHFA or the United States. Without limiting the foregoing, nothing in this Order shall affect any action against MERS, MERSCORP or officers, directors, or employees by a financial regulatory agency, the United States Department of Justice or any other law enforcement agency, to the extent permitted under applicable law.

(7) The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(8) Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any

benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

(9) The provisions of this Order shall be binding upon MERSCORP and MERS and their successors and assigns.

(10) MERS and MERSCORP consent to the issuance of this order before the filing of any notices, or taking of any testimony or adjudication, and solely for the purpose of settling this matter without a formal proceeding being filed.

IT IS SO ORDERED, this 13th day of April, 2011.

OFFICE OF THE COMPTROLLER OF THE CURRENCY

By: /s/Joseph H. Evers
Joseph H. Evers
Deputy Comptroller for Large Bank Supervision

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

By: /s/Jennifer J. Johnson
Jennifer J. Johnson
Secretary of the Board



FEDERAL DEPOSIT INSURANCE CORPORATION

By: /s/Thomas J. Dujenski
Thomas J. Dujenski
Regional Director
Atlanta Regional Office

OFFICE OF THRIFT SUPERVISION

By: /s/Thomas A. Barnes
Thomas A. Barnes
Deputy Director
Examinations, Supervision and Consumer Protection

FEDERAL HOUSING FINANCE AGENCY

By: /s/Christopher H. Dickerson
Christopher H. Dickerson
Acting Deputy Director for Enterprise Regulation