**EXHIBIT E**

FILED'11 MAY 25 9:50USDC-ORM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

IVAN HOOKER and KATHERINE
HOOKER,

        Plaintiffs,        Civ. No. 10-3111-PA

                                **ORDER**

   v.

NORTHWEST TRUSTEE SERVICES,
INC.; BANK OF AMERICA, N.A.;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

        Defendants.

**PANNER, J.**

     Before the court is a motion to dismiss (#8) and request for judicial notice (#6) by Bank of America, N.A. and Mortgage Electronic Registration Systems, Inc. (MERS).[1] Defendants' request for judicial notice is GRANTED. Defendants' motion to dismiss is DENIED. Plaintiffs' request for a declaratory judgment is GRANTED.

---

    [1]Plaintiffs dismissed their claims against Northwest Trustee Services, Inc (Northwest).

1 - ORDER

**BACKGROUND**

Except where noted, the following background is from the complaint or judicially noticeable materials.

On November 17, 2005, plaintiffs obtained a loan from GN Mortgage, LLC. A trust deed secured the loan. The note and trust deed list GN as the lender. The trust deed lists MERS as the beneficiary. MERS is not listed on the note. The trust deed lists Regional Trustee Services Corp. as trustee. On November 23, 2005, the trust deed was recorded in the Jackson County land records.

In September 2009, plaintiffs defaulted. On May 3, 2010, MERS assigned the trust deed to Bank of America. Also on May 3, MERS appointed Northwest successor trustee. That same day, Northwest executed a notice of default and election to sell. On May 7, 2010, defendants recorded the May 3 assignment of the trust deed, appointment of successor trustee, and notice of default and election to sell.

On September 7, 2010, plaintiffs filed the complaint in state court. On September 13, 2010, Wells Fargo Bank, N.A., as attorney in fact for Bank of America, appointed Northwest successor trustee. On September 16, 2010, Northwest executed a rescission of the notice of default recorded on May 7, 2010. Also on September 16, 2010, Northwest executed a second notice of default and election to sell. On September 20, 2010, defendants recorded the September 16, 2010 appointment, rescission, and

2  - ORDER

second notice of default.

On October 7, 2010, defendants removed the case to this court. On January 19, 2011, pursuant to my order, defendants submitted a complete chain of title for the note and trust deed. Defendants' chain of title included a copy of a January 3, 2011 "MIN Summary and Milestones." (Jan. 31, 2011 McCarthy Decl., Ex. 1, 1-2.) The MIN Summary is how MERS members track transfers of servicing and ownership rights of loans within the MERS system. According to the MIN Summary, on December 9, 2005, Guaranty Bank, FSB transferred the beneficial interest in the trust deed to Wells Fargo Home Mortgage. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 1-2.) Although Guaranty Bank appears to have been the original servicer of the loan, the record is silent as to how or when Guaranty Bank obtained the beneficial interest in the trust deed.

On December 14, 2005, Guaranty Bank transferred the servicing rights to Wells Fargo Home Mortgage. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 2.) On July 15, 2006, Wells Fargo Home Mortgage transferred the beneficial interest in the trust deed to Bank of America. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 2.) Defendants did not record the transfer of the beneficial interest in the trust deed from Guaranty Bank to Wells Fargo or from Wells Fargo to Bank of America in the Jackson County land records. As noted above, defendants did record a May 3, 2010 assignment of the trust deed from MERS to Bank of America.

3 - ORDER

**STANDARDS**

On a motion to dismiss, the court reviews the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). This review is generally limited to the allegations in the complaint, exhibits attached to the complaint, and judicially noticeable materials. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). This plausibility standard requires the pleader to present facts that demonstrate "more than a sheer possibility" that defendant is liable for the alleged misconduct. Id.

In considering a motion to dismiss, a court must distinguish between the factual allegations and legal conclusions asserted in the complaint. Id. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002). At the pleadings stage, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, if the well-pleaded factual allegations plausibly give rise to the relief sought, a court shall deny the motion to dismiss. Iqbal, 129 S.Ct. at 1950.

4 - ORDER

## DISCUSSION

### I. Judicial Notice

Federal Rule of Evidence 201 states that a court may take judicial notice of a fact outside the pleadings if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), impliedly overruled on other grounds as discussed in Gallardo v. Dicarlo, 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002). Defendants request the court take judicial notice of the following documents recorded September 20, 2010: (1) rescission of the May 3, 2010 notice of default and election to sell; (2) September 13, 2010 appointment of successor trustee; and (3) September 16, 2010 notice of default and election to sell. Each document is recorded in the Jackson County land records. Defendants' request for judicial notice (#6) is GRANTED.

### II. Motion to Dismiss

Under the Oregon Trust Deed Act, "'Beneficiary' means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest . . . ." ORS 86.705(1). The trust deed at issue states:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

5  - ORDER

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
>
> . . .
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

(Notice of Removal, Ex. 1, 8 (emphasis added).)

Although the trust deed lists MERS as the nominal beneficiary "solely as a nominee for Lender . . .," (Notice of Removal, Ex. 1, 7), the deed makes clear that MERS is not "the person for whose benefit a trust deed is given," ORS 86.705(1). Instead, the trust deed confirms that GN holds the beneficial interest. The trust deed lists GN, not MERS, as "Lender." (Notice of Removal, Ex. 1, 6.) All payments on the loan are owed to GN, not MERS. (Notice of Removal, Ex. 1, 8.) GN, not MERS, "may invoke the power of sale and any other remedies permitted by Applicable Law." (Notice of Removal, Ex. 1, 18, ¶ 22.)

While the trust deed lists MERS as the nominal beneficiary, the trust deed does not authorize MERS to take any actions on its own behalf. First, MERS holds only legal title to the trust deed. (Notice of Removal, Ex. 1, 8.) Second, MERS acts solely as

6 - ORDER

nominee for GN. (Notice of Removal, Ex. 1, 7-8.) Finally, MERS may act as GN's nominee only "if necessary to comply with law or custom[.]" (Notice of Removal, Ex. 1, 8.) The trust deed emphasizes that MERS is not the beneficiary, but rather the nominee or agent of the lender. Because the trust deed clearly demonstrates GN, and not MERS, is the person for whose benefit the trust deed was given, GN (or its successor in interest) is the beneficiary of the trust deed. ORS 86.705(1); see In re McCoy, 2011 WL 477820, at *3 (Bankr. D. Or. Feb. 7).[2]

That MERS was the agent or nominee of the beneficiary does not mean the non-judicial foreclosure proceedings necessarily violated Oregon law. See In re McCoy, 2011 WL 477820, at *4. As in other recent cases in this district, "The problem that defendants run into in this case is an apparent failure to record assignments necessary for the foreclosure." Burgett v. MERS, 2010 WL 4282105, at *3 (D. Or. Oct. 20); see also In re McCoy, 2011 WL 477820, at *4. In Oregon, a trustee may conduct a non-judicial foreclosure sale only if:

> The trust deed, <u>any assignments of the trust deed by the trustee or the beneficiary</u> and any appointment of a successor trustee <u>are recorded in the mortgage records</u>

---

[2] The note reinforces my conclusion that plaintiffs granted the trust deed for the benefit of GN, not MERS. The note states the trust deed "protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note." (Notice of Removal, Ex. 1, 28, ¶ 11.) GN, not MERS, is the "Note Holder." (Notice of Removal, Ex. 1, 26, ¶ 1.) MERS is not mentioned in the note.

7 - ORDER

in the counties in which the property described in the
deed is situated . . . .

ORS 86.735(1)(emphasis added).

Should the beneficiary choose to initiate non-judicial foreclosure proceedings, the Act's recording requirements mandate the recording of any assignments of the beneficial interest in the trust deed. Burgett, 2010 WL 4282105, at *2; In re McCoy, 2011 WL 477820, at *3. Defendants appear to argue that rather than requiring the recording of every assignment of the trust deed, the Act allows defendants to instead track every assignment of the trust deed within the MERS system, recording only the final assignment of the trust deed in the county land records. Because the Oregon Trust Deed Act requires the recording of all assignments by the beneficiary, defendants' argument fails. ORS 86.735(1); see In re McCoy, 2011 WL 477820, at *3-4.

Oregon's recording requirement is consistent with the longstanding rule that the trust deed or mortgage generally follows the note. Carpenter v. Longan, 83 U.S. 271, 274 (1872); U.S. Nat'l Bank of Portland v. Holton, 99 Or. 419, 427-29, 195 P. 823, 826 (1921)(collecting cases). As noted by defendants, "the assignment of the note automatically assigns the underlying interest in the trust deed because MERS is nominee for whichever entity is the owner (if the owner is a MERS member)." (Defs.' Reply, 10.) Defendants also state, "the content of the deed of trust itself . . . established the parties' intent that the trust

8 - ORDER

deed, and MERS' agency relationship, follow the note." (Id. at 11.) In fact, the trust deed expressly states, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Notice of Removal, Ex. 1, 16, ¶ 20(emphasis added).) If there were transfers of the beneficial interest in the trust deed, defendants were required to record those transfers prior to initiating a non-judicial foreclosure in the manner provided in ORS 86.740 to 86.755. ORS 86.735(1).

Considering what is commonly known about the MERS system and the secondary market in mortgage loans, plaintiffs allege sufficient facts to make clear that defendants violated the Oregon Trust Deed Act by failing to record all assignments of the trust deed.[3] Therefore, defendants' motion to dismiss is DENIED.

The record demonstrates that in addition to requiring the denial of defendants' motion to dismiss, plaintiffs are entitled to declaratory relief. Pursuant to my order, defendants submitted the MIN Summary and Milestones for the loan at issue. The MIN Summary demonstrates that on December 9, 2005, Guaranty Bank, FSB transferred the beneficial interest in the trust deed to Wells

---

[3]For background information on MERS, see generally Gerald Korngold, Legal and Policy Choices in the Aftermath of the Subprime and Mortgage FiNancing Crisis, 60 S.C. L. Rev. 727, 741-42 (Spring 2009) and Christopher L. Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System, 78 U. Cin. L. Rev. 1359, 1368-1374 (Summer 2010).

9 - ORDER

Fargo Home Mortgage. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 2.) As noted above, the record is silent as to how or when Guaranty Bank acquired any interest in the loan. On July 15, 2006, Wells Fargo transferred the beneficial interest in the trust deed to Bank of America. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 2.) Defendants did not record Guaranty Bank's transfer of the beneficial interest in the trust deed to Wells Fargo. Defendants' chain of title submission therefore demonstrates that defendants violated ORS 86.735(1) by initiating non-judicial foreclosure proceedings prior to recording all assignments of the trust deed in the Jackson County land records.

While I recognize that plaintiffs have failed to make any payments on the note since September 2009, that failure does not permit defendants to violate Oregon law regulating non-judicial foreclosure. The Oregon Trust Deed Act "represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor." Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp., 209 Or.App. 528, 542, 149 P.3d 150, 157 (2006). In part due to the legislature's desire "to protect the grantor against the unauthorized loss of its property," a party conducting a non-judicial foreclosure must demonstrate strict compliance with the Act. Id. As demonstrated

10 - ORDER

above, the MIN Summary demonstrates defendants failed to comply with the Oregon Trust Deed Act.

Although not affecting my conclusion here, the MIN Summary raises an additional concern relevant to numerous cases pending before me. As noted above, GN is listed as Lender on both the trust deed and the note. The MIN Summary, however, makes no mention of GN. In fact, the MIN Summary is silent as to how or when Guaranty Bank became an "Investor" holding the beneficial interest in the trust deed. (Jan. 31, 2011 McCarthy Decl., Ex. 1, 2.) The MIN Summary indicates only that on December 1, 2005, Guaranty Bank registered the loan in the MERS system. What occurred before registration, and how or when Guaranty Bank obtained any interest in the loan (from GN or another) is not revealed.

The apparent gap in the chain of title is not the only issue that causes me concern. On May 7, 2010, defendants recorded: (1) an assignment of the trust deed from MERS to Bank of America; (2) MERS's appointment of Northwest as successor trustee; and (3) a notice of default and election to sell. Regarding the May 7 recordings, defendants state, "After receiving plaintiffs' complaint, Northwest Trustee Services, Inc. recognized that certain documents were recorded out-of-order." (Oct. 14, 2010 Mem. Supp. Mot. Dismiss, 4.) Upon recognizing the problems - after initiating non-judicial foreclosure proceedings and only

11 - ORDER

after receiving plaintiffs' complaint alleging improper recordings - defendants rescinded the May 7, 2010 notice of default and election to sell. The "out-of-order" recordings demonstrate problems, not atypical in my view, often caused by foreclosing parties rushing to expedite non-judicial foreclosures.

On May 3, 2010, a "Vice President" of MERS assigned the trust deed to Bank of America. (Notice of Removal, Ex. 1, 32.) That same day, another "Vice President" of MERS appointed Northwest successor trustee. (Notice of Removal, Ex. 1, 34.) Also on May 3, 2010, an "Assistant Vice President" of Northwest signed the notice of default and election to sell. (Notice of Removal, Ex. 1, 36-37.) The same notary public apparently witnessed all three executives sign the documents on the same day. Considering defendants relied on the May 3, 2010 documents to justify non-judicial foreclosure proceedings, defendants' document review appears rushed. Considering the time spent reviewing the documents, assigning the trust deed, appointing a successor trustee, and issuing a notice of default and election to sell, I am not surprised to learn that "[a]fter receiving plaintiffs' complaint, Northwest Trustee Services, Inc. recognized that certain documents were recorded out-of-order."

Notwithstanding the above concerns, I note the May 3, 2010 assignment states that MERS assigns "all beneficial interest" in

12 - ORDER

the trust deed to Bank of America. (Notice of Removal, Ex. 1, 32.) As explained above, MERS never had any beneficial interest in the trust deed. MERS held only legal title as an agent or nominee of GN (or GN's successors). If MERS acted only as an agent or nominee, why is the principal not identified in the May 3, 2010 assignment? The confusion is heightened as the MIN Summary demonstrates at least two unrecorded transfers of the beneficial interest in the trust deed occurred before May 3, 2010. As Justice Page of the Supreme Court of Minnesota summarized:

> MERS claims to hold legal title, but only legal title, to the mortgage being foreclosed. MERS also claims that in foreclosing mortgages it acts only as nominee for its members. But MERS can act as nominee for only the particular MERS member who holds the promissory note at any particular time and, when that promissory note is assigned between members, the member for which MERS acts as nominee, and on whose behalf MERS holds legal title, necessarily changes. In other words, the entity on whose behalf MERS holds legal title to the mortgage changes every time the promissory note is assigned.

<u>Jackson v. Mortgage Electronic Registration Systems, Inc.</u>, 770 N.W.2d 487, 503-04 (Minn. 2009)(Page, J., dissenting). Although Justice Page wrote in dissent in a case involving a Minnesota statute, his concerns apply to numerous cases pending before me.

Foreclosure by advertisement and sale, which is designed to take place outside of any judicial review, necessarily relies on the foreclosing party to accurately review and assess its own authority to foreclose. Considering that the non-judicial

13 - ORDER

foreclosure of one's home is a particularly harsh event, and given the numerous problems I see in nearly every non-judicial foreclosure case I preside over, a procedure relying on a bank or trustee to self-assess its own authority to foreclose is deeply troubling to me.

I recognize that MERS, and its registered bank users, created much of the confusion involved in the foreclosure process. By listing a nominal beneficiary that is clearly described in the trust deed as anything but the actual beneficiary, the MERS system creates confusion as to who has the authority to do what with the trust deed. The MERS system raises serious concerns regarding the appropriateness and validity of foreclosure by advertisement and sale outside of any judicial proceeding.

Additionally, the MERS system allowed the rise of the secondary market and securitization of home loans. A lender intending to immediately sell a loan on the secondary market is not concerned with the risk involved in the loan, but with the fees generated. If a lender aims to quickly pass a loan off onto an investor, a stated-income loan appears not as an unacceptable risk, but as an income stream. MERS makes it much more difficult for all parties to discover who "owns" the loan. When a borrower on the verge of default cannot find out who has the authority to modify the loan, a modification or a short sale, even if

14 - ORDER

beneficial to both the borrower and the beneficiary, cannot occur.

When no borrowers default, the problems inherent in the MERS system may go unnoticed. Unfortunately for banks, borrowers, investors, and courts throughout the country, many borrowers are now defaulting. Countless grantors of trust deeds now face the harsh prospect of losing a home outside of any judicial proceeding. At the same time, the MERS system greatly increased the number of investors stuck holding worthless notes. A lender that knows it will immediately sell a loan on the secondary market has no incentive to ensure the appraisal of the security is accurate. Similarly, the lender need not concern itself with the veracity of any representations made to the borrower. In short, the MERS system allows the lender to shirk its traditional due diligence duties. The requirement under Oregon law that all assignments be recorded prior to a non-judicial foreclosure is sound public policy:

> [I]t is apparent with the benefit of hindsight that the ability of lenders to freely and anonymously transfer notes among themselves facilitated, if not created, the financial banking crisis in which our country currently finds itself. It is not only borrowers but also other lenders who rightfully are interested in who has held a particular promissory note. For example, a lender who holds a promissory note that has become worthless may have an interest in knowing the hands through which that note passed.

Jackson, 770 N.W.2d at 504 (Page, J., dissenting). Justice Page wrote in dissent, but his views are persuasive.

15 - ORDER

Although the concerns raised in this order appear in many foreclosure cases pending before me, I resolve the current controversy on narrow grounds. Following defendants' removal of the complaint, plaintiffs still seek declaratory relief that defendants' non-judicial foreclosure is wrongful. I agree with Judge Alley that "Oregon law permits foreclosure without the benefit of a judicial proceeding only when the interest of the beneficiary is clearly documented in a public record." In re McCoy, 2011 WL 477820, at *4. Because defendants failed to record all assignments of the trust deed, the non-judicial foreclosure proceedings violated the Oregon Trust Deed Act. Therefore, plaintiffs are entitled to declaratory relief on that claim.

## CONCLUSION

Defendants' request for judicial notice (#6) is GRANTED. Defendants' motion to dismiss (#8) is DENIED. Plaintiffs are entitled to a declaratory judgment stating defendants violated ORS 86.735(1). This non-judicial foreclosure proceeding is dismissed. Judgement and costs for plaintiffs.

IT IS SO ORDERED.

DATED this 25 day of May, 2011.

*[signature]*

OWEN M. PANNER
U.S. DISTRICT JUDGE

16 - ORDER